UNITED STATES of America ex rel. George H. TILLMAN

v.

Noah L. ALLDREDGE, Warden, Lewisburg Federal Penitentiary.

Civ. A. No. 71-2887.

United States District Court, E. D. Pennsylvania.

Oct. 30, 1972.

Morris H. Wolff, Philadelphia, Pa., for plaintiff.

Robert N. DeLuca, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

On January 7 and 8, 1971, George Tillman was tried before a jury on a four-count indictment (Criminal No. 69–75) charging him with selling, and aiding and abetting in sales of quantities of heroin. At the conclusion of the government's case, the court granted Tillman's motion for judgment of acquittal as to the third and fourth counts. The jury returned a verdict of guilty as to the first and second counts. On July 30, 1971, Tillman was sentenced to a minimum mandatory term of five years [1] on the second count which charged a vio-

---

1. See 26 U.S.C. § 7237(b) and (d).

lation of 26 U.S.C. § 4705(a), and to a concurrent term of two years on the first count which charged a violation of 26 U.S.C. § 4704(a). An appeal was filed in the criminal proceedings and the conviction and sentence were affirmed. 467 F.2d 645 (3 Cir. 1972).

While the appeal was pending in the criminal case, the instant petition for writ of habeas corpus under 28 U.S.C. § 2255 was filed. In this petition Tillman asserts that his rights were violated in the criminal proceedings in that:

1. His not guilty plea was not a knowing and intelligent one because, at the time of trial, his attorney failed to advise him of a plea bargain allegedly offered by the prosecuting attorney;

2. Alternatively, if a plea bargain was not in fact offered by the prosecution, he was denied the effective assistance of counsel by his attorney's failure to explore the possibility of such a plea bargain, by his attorney's failure to advise him that one of the counts carried a minimum mandatory five year sentence, and by his attorney's lack of preparation for, and incompetent handling of, trial.

Needless to say, the attorney who filed the instant petition on Tillman's behalf did not represent him at the criminal trial. In fact, he is fourth in a succession of counsel. One privately retained attorney represented Tillman at arraignment, another privately retained attorney represented him at trial, the Public Defender, court appointed, represented him on the motion for new trial and at sentence, and present counsel, privately retained, represented him on appeal in the criminal case and in these proceedings. An evidentiary hearing was held on this petition. At the conclusion of the hearing, the court announced certain tentative findings, but afforded counsel an opportunity to submit briefs before rendering a final decision. After due consideration of the briefs, and upon review of the record of the criminal proceedings and the evidence adduced at the hearing on this petition, I conclude that Tillman's claims are without merit and the petition will be denied.

1. *Lack of a knowing and intelligent Not Guilty plea.*

The safeguards which have been built up in the law with respect to entry of pleas in criminal cases have been designed, primarily, to insure that a defendant does not give up his constitutional right to trial by jury, unless by voluntary and intelligent act on his part. Thus, if a defendant wishes to be tried by the court alone, he must first satisfy the court that he understands the consequences of the waiver of his right to trial by jury. Adams, Warden, et al v. U. S. ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Rule 23(a), F.R.Crim.P. If he wishes to enter a guilty plea, the record must establish that the plea was knowing, intelligent and voluntary, without threats or promises and with knowledge of the range of sentences. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 493, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962); Chapin v. United States, 341 F.2d 900 (10th Cir. 1965). In the federal system, a guilty plea may not be accepted unless the court ascertains, by personal inquiry, that there is a factual basis for the plea. Rule 11, F.R.Crim.P. See McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). There are no comparable safeguards with respect to not guilty pleas. Apart from seeing to it that a defendant is competent to stand trial (see 18 U.S.C. § 4244), and that he is represented by counsel, the law apparently assumes that the government's burden to prove defendant's guilt beyond a reasonable doubt at trial is safeguard enough where a defendant contests the charges against him. The law even sanctions the entry of not guilty pleas for those who stand mute or refuse to plead to the charges. Rule 11, F.R.Crim.P.

Tillman's attempt to superimpose principles governing guilty pleas on his

not guilty plea is ingenious, but unconvincing. He has cited no case authority to support his position, and independent research fails to reveal any.

Actually, Tillman's argument is not directed to the not guilty plea at all. The plea was entered by Tillman[2] on May 27, 1969, and there is no suggestion that there was any mention of a plea bargain at that time. His complaint really is that if a plea bargain was offered at trial, he was entitled to be informed of that fact so that he could make an intelligent choice whether to proceed to trial or to accept the terms of the plea bargain. The point is an interesting one, but since I find that no plea bargain was, in fact, offered to Tillman's counsel, it will not be necessary to discuss it.

What Tillman relies upon in support of his contention that a plea bargain was offered are statements made at the time of his sentencing, some seven months after the trial. There was discussion between the court and Tillman concerning the mandatory aspect of the sentence on count 2 and at that point, the Assistant United States Attorney, who had been the prosecuting attorney at the trial, commented:

"MR. deLUCA: Your Honor, before this case went to trial I did discuss the case with Mr. King[3] extensively, both when we originally thought it would try, and then, be-

cause of Mr. Tillman's illness, at the later time when the case actually came to trial. I informed Mr. King at the time that Count 1 of the indictment carried a non-mandatory count and Count 2 of the indictment contained a mandatory prison term. I informed Mr. King at the time that the Government would be willing to drop Count 2 of the indictment in the event that Mr. Tillman entered a plea of guilty to Count 1. I told that to Mr. King at least on two occasions. Mr. King informed me that Mr. Tillman did not want to enter a plea of guilty.

"THE COURT: I am certain that that is the fact, because there was some hint early in the proceedings of a possibility of a plea, and I understood Mr. Tillman was insistent upon —"

(N.T. 11, Sentencing July 30, 1971)

Mr. King, who had been replaced by the Defender as Tillman's counsel prior to sentencing, was not present to refute the statements made by the prosecuting attorney and the court. After hearing the sworn testimony of Messrs. King, deLuca and Tillman on this petition, I am convinced that the statement made by the Assistant United States Attorney, that a plea bargain had been offered to Mr. King, was inaccurate and that the court was likewise mistaken in its impression,[4] expressed at sentencing,

2. Tillman testified at the hearing on this petition that he was in the back of the courtroom and that his attorney, Leon Katz, entered the plea for him. The transcript of the arraignment proceedings before Judge C. Wm. Kraft, Jr., indicated that Tillman himself entered the plea. I accept the accuracy of the transcript and believe that Tillman was mistaken in his testimony.

3. Julian King, Esquire, now a Judge of the Court of Common Pleas of Philadelphia.

4. The court remained under that impression for some time after Tillman's sentencing. At the trial of the co-defendant, Morris McCants, in November 1971, the court commented:

"THE COURT: One other thing: I don't want a charge in this case, as is made in the co-defendant's case, that a deal was offered and was not communicated to the defendant. Was any deal offered in this case, and if so, was it communicated to the defendant? When I refer to a deal, I mean it was charged in the Tillman case after the fact that Mr. deLuca offered to nol. pros. the mandatory sentence count if the defendant entered a plea to the non-mandatory count. There is now some question in that case. I don't want any questions at all.

"MR. NATALI: Judge Luongo, everything that Mr. deLuca has offered has been communicated to the defendant.

"THE COURT: I want no questions left open.

that a plea bargain had been offered and communicated to Tillman.

Mr. King, trial counsel to whom the alleged plea bargain had been offered, testified that he had no recollection of any such discussion. He testified further that it was his practice and custom to note matters of significance on the case file envelope and that if a plea bargain had been offered he "most assuredly" (N.T. 15, Habeas Corpus Hearing) would have noted it on the file. He did recall that the prosecuting attorney had asked him whether Tillman would enter a guilty plea, and that he had advised the prosecutor that he would not.

Assistant United States Attorney deLuca testified that, although he had initially felt fairly certain that he had offered to Tillman's trial counsel to drop the mandatory counts in return for pleas of guilty to the non-mandatory counts, upon further reflection he could not recall any specific conversation concerning dismissal of counts in return for a guilty plea and that he was probably confused because it had been his normal practice to make such an offer. His only clear recollection was that he had asked Mr. King several times whether his client intended to enter a guilty plea, and on each occasion Mr. King assured him that Tillman would not.

Tillman's testimony, of course, was of a negative nature, i. e. that no "offer" had ever been communicated to him. He was obviously not in a position to testify of his own knowledge that offers had been made to his attorney.

Considering all the testimony, I am satisfied that no offer of a plea bargain was ever made to Mr. King. I am convinced that if an offer had been made, he would have made a notation of it on his file (just as he had noted on his file other pertinent information such as discussions with U. S. Marshal as to Tillman's place of custody; the penalties for the offenses, etc.) and I am further convinced that he would have discussed it with his client. Mr. King had everything to gain and, so far as appears in this record, nothing to lose by communicating such information to his client. I am satisfied that the Assistant United States Attorney made the statement at the time of sentencing because it had been usual and normal for him to make such an offer, but I firmly believe that he was mistaken in thinking he had made such an offer to Mr. King.

2. *Denial of effective assistance of counsel.*

The charge here is that trial counsel was ineffective (a) for failing to inform Tillman of the mandatory sentence on one of the counts; (b) for failing to explore the possibility of a plea bargain if one was, in fact, not offered, (c) for lack of preparation for trial, and (d) incompetence at trial in permitting Tillman to take the stand.

 The burden of proving all the elements necessary to sustain the claim of ineffective assistance of counsel is on the petitioner. Lepiscopo v. United States, 426 F.2d 769 (3d Cir. 1970); Caldwell v. United States, 435 F.2d 1079 (10th Cir. 1970). In assessing an attorney's trial decisions, whether "another trial lawyer would or would not have employed the same tactic is irrelevant" United States v. Matalon, 445 F.2d 1215, 1219 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 93 (1971). The trial attorney's conduct of the trial may not be judged by the perfect vision of hindsight. As stated by the Court of Appeals for this Circuit:

"A retrospective examination of a lawyer's representation to determine whether it was free from any error

MR. NATALI: I will tell you that as an officer of the Court, Your Honor.

"THE COURT: Yes, but I am going to have to have Mr. McCants at some point state for the record that he is aware that the offer was made, because there is a serious charge now being made and a charge being made apparently against one of the attorneys. It is a terrible thing. I felt certain that he had communicated to his client also."

(N.T. 18–19 Trial of Morris McCants, November 9, 1971)

would exact a higher measure of competency than the prevailing standard.

\* \* \* \* \* \*

"The standard [is] normal competency . . . . This standard also makes it clear that the ultimate issue is not whether a defendant was prejudiced by his counsel's act or omission, but whether counsel's performance was at the level of normal competency." Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970)

The charges against Tillman's trial counsel must be examined in the light of the foregoing principles.

(a) and (b). *Failure to inform of mandatory sentence and failure to explore plea bargain.*

■ Two of the charges must be considered together. What the sentence for a crime may be is totally irrelevant to the issue of guilt or innocence. Knowledge of the nature and potential severity of sentences on criminal charges can only be relevant to a defendant if he is presented with the possibility of a negotiated plea. Whether Tillman's trial counsel was ineffective for failing to inform his client that two of the charges against him carried minimum mandatory sentences depends, then, on whether counsel was under an affirmative obligation to suggest to Tillman the possibility of a negotiated plea and to attempt to obtain his authorization to initiate and participate in such discussions with the prosecuting attorney. If counsel was under such an obligation, it would follow that he was likewise under an obligation to advise Tillman of the penalties for each of the offenses to enable him to make an intelligent decision on the subject.

Negotiated pleas are nothing new in the law. That fact is attested to by the vast numbers of habeas corpus petitions charging breach of alleged plea bargains, or charging that pleas were improperly induced by the prosecutor's blandishments. Recognition of the propriety of disposing of criminal charges through the process of negotiated pleas is, however, a relatively recent development in the law. See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L. Ed.2d 427 (1971); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed.2d 162 (1970) and proposed Amendment to Rule 11, F.R.Crim.P.,[5] setting

5. The proposed amendment to Rule 11 provides as follows:
 "(e) Plea Agreement Procedure.
 (1) In General. The attorney for the government and the attorney for the defendant may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both. The court shall not participate in any such discussions.
 (2) Notice of Such Agreement. If a plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specific sentence will be imposed or that other charges before the court will be dismissed, the court shall require the disclosure of the agreement in open court at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to acceptance or rejection until receipt of a presentence report.
 (3) Acceptance of Plea. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement.
 (4) Rejection of Plea. If the court rejects the plea agreement, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.
 (5) Time of Plea Agreement Procedure. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraign-

standards for court acceptance or rejection of plea agreements.

An attorney is in a sensitive area, and he must carefully weigh a number of considerations, when he broaches the subject of a guilty plea to a client who asserts that he is innocent. The subject has been very recently considered in the American Bar Association's Project on Standards for Criminal Justice. In Part VI of the Approved Draft of Standards Relating to the Prosecution Function and the Defense Function, the Committee proposed the following guidelines:

"6.1 Duty to explore disposition without trial

* * * * * *

(b) When the lawyer concludes, on the basis of full investigation and study, that under controlling law and the evidence, a conviction is probable, he should so advise the accused and seek his consent to engage in plea discussions with the prosecutor, if such appears desirable.

(c) Ordinarily the lawyer should secure his client's consent before engaging in plea discussions with the prosecutor."

Trial counsel's testimony at the hearing before me made it quite clear that Tillman, apparently insisting that he was innocent of all charges, "didn't wish to plead guilty to anything." (N.T. 13 Habeas Corpus Hearing) Since it is Tillman's burden to establish ineffective assistance of counsel, it was incumbent on him to present evidence that trial counsel was aware, before trial, of facts and circumstances indicating that a conviction was probable. An effort by the court to elicit such evidence was thwarted by Tillman's present counsel. During the questioning of trial counsel at the hearing on the petition, the following occurred:

BY THE COURT:

* * * * * *

Q Was there anything in his [Tillman's] recounting to you of the facts of the transaction that would cause you to suggest to him the possibility of a guilty plea to some of the charges? Was there anything in that that would cause you to consider that that might be a proper procedure?

MR. WOLFF: Your Honor, if you please, may I respectfully take exception to the Court's question and to the last question and ask that both the question and answer be stricken, on the premise that they are not relevant to the motion set forth in the habeas corpus petition. I recognize Your Honor will probably deny my request, but I am simply—

THE COURT: Quite to the contrary. I grant your request, and don't answer the question, Judge King."

(N.T. 16 Habeas Corpus Hearing)

In the absence of evidence as to what Tillman might have told his trial attorney about his involvement in the charges, all that appears is Tillman's apparent insistence to trial counsel that he was innocent and that he "didn't wish to plead guilty to anything." Under such circumstances I cannot say that counsel's failure to suggest to Tillman that he should consider entering a guilty plea constituted ineffective assistance of counsel. Petitioner's present counsel has cited no case authority [6] for the proposition he urges, and in the absence of such authority, I am not prepared to hold that an attorney who fails to explore the possibility of a plea bargain on

---

ment or at such other time, prior to trial, as may be fixed by the court.

(6) Inadmissibility of Plea Discussions. If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal or civil action or administrative proceeding."

6. In the 13 page brief submitted in support of this petition, not a single case is cited as authority for any of the contentions advanced.

behalf of a client who insists that he is innocent, has represented his client ineffectively.

(c) and (d). *Lack of preparation for trial and incompetence at trial.*

 Tillman testified that trial counsel didn't consult with him prior to trial. Trial counsel testified that he was retained early in 1970 and that, after at least one postponement because of Tillman's illness, the case was tried on January 7 and 8, 1971. He testified further that, prior to trial, he had examined the evidence the prosecutor intended to present against Tillman. At the time of trial he was afforded the opportunity to, and did, interview the government's informant. Present counsel offers no suggestion as to what further investigation or preparation would have produced, he insists only that the lack of consultation with Tillman establishes inadequate preparation for trial. Lack of consultation might well support a finding of ineffective assistance of counsel [United States ex rel. Washington v. Maroney, 428 F.2d 10 (3d Cir. 1970)], but the amount of time counsel spends with the defendant is only one factor to be weighed in determining the effectiveness of representation. O'Neal v. Smith, 431 F.2d 646 (5th Cir. 1970); Brinegar v. United States, 290 F.2d 656 (6th Cir. 1961). Examination of the trial record, and in particular the vigorous and probing cross-examination of the government's witnesses, provides ample evidence of trial counsel's competence and effectiveness.

 As for the charge of incompetence at trial, it is contended that proof of that is established by the very fact that trial counsel "permitted" Tillman to take the stand, where he proceeded to incriminate himself by his testimony. Present counsel suggests that Tillman would have been better advised not to take the stand. Perhaps so, but reasonable men can differ as to that. Prior to trial, Tillman's trial counsel had met with the prosecuting attorney and had had an opportunity to examine the government's evidence. At trial an undercover agent testified that he negotiated with Tillman for the purchase of a quantity of heroin, although a third person, in Tillman's presence, actually turned over the goods when the transaction was consummated. The transaction was being surveilled by other government agents at a distance. Since there was apparently no dispute as to Tillman's presence at the scene, the only issue was Tillman's role in the transaction; whether he was an innocent bystander or the prime mover and principal actor in the transaction. One strategy, of course, would have dictated that Tillman remain silent, in which case the undercover agent's testimony as to Tillman's prime role would have gone uncontradicted. The other strategy was to have Tillman take the stand, candidly admit his presence during the transaction and attempt to minimize his role and, perhaps, thereby gain the jury's sympathy. Reasonable men could easily differ as to which was the preferable strategy, consequently trial counsel cannot be held to be ineffective for "permitting" his client to take the stand. See United States v. Matalon, *supra*; Moore v. United States, *supra*.

Further, it is unrealistic to assume that the decision to have Tillman take the stand was made by trial counsel alone. Present counsel attempts to picture Tillman as illiterate and ignorant. He may be illiterate (and I have serious doubts about that [7]) but he is certainly not ignorant. He impressed me as shrewd and knowledgeable. He is no novice in the courts [8] or with lawyers. I

---

7. At the hearing he had no difficulty picking out papers from his file when he needed them. He has also communicated by letter on several occasions with the court and has filed several handwritten petitions, all of which, he testified, were written for him by other inmates.

8. His prior record includes ten convictions for gambling and lotteries violations from 1957 through 1963, and four convictions on more serious offenses from 1904 through 1970.

have no doubt that the decision to take the stand was at least, in part, Tillman's and that the cry against trial counsel would have been even louder had counsel not "permitted" Tillman to testify.

The petition will be denied.