· **UNITED STATES of America** .

v.

**Lowell R. DOWNING.**

**Crim. No. 78–82–2.**

United States District Court,
· W. D. Pennsylvania.

July 10, 1980.

Wendell G. Freeland, Pittsburgh, Pa., for Downing.

Sandra Jordan, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

## MEMORANDUM

MARSH, District Judge.

Lowell Downing, by his attorney, has presented a "Motion to Vacate Sentence" alleging ineffective assistance of counsel. Downing was convicted by a jury on November 17, 1978 at Criminal No. 78–82–2 for violating § 841(a)(1), Title 21 U.S.C.A., i. e., for unlawfully distributing and possessing with intent to distribute a quantity of cocaine. The evidence in support of conviction was overwhelming. A sentence of a $2,000 fine and imprisonment for eight years, and a special parole term of three years, was imposed.

On appeal, the conviction was affirmed on February 15, 1980. *United States v. Downing*, 615 F.2d 1354 (3rd Cir.1980).

An evidentiary hearing on the Motion to Vacate Sentence was held on May 7, 1980. Downing has been at liberty upon posting a $25,000 surety bond.

In view of Downing's insistence upon a jury trial despite his admission of the facts implicating him, in our opinion the Motion to Vacate because of ineffective assistance of counsel should be denied.

From the record and testimony at the hearing, the court makes the following findings of fact and conclusions of law:

After his arrest, Downing retained Attorney Larry P. Gaitens to represent him. A trial was fixed for June 27, 1978 and a jury was selected. Thereupon, Downing changed his plea from not guilty to guilty. The reason he gave was that he did not want to be sent to prison. Attorney Gaitens had advised him that if found guilty, he would likely be sentenced to prison, but if he pleaded guilty and agreed to cooperate with the prosecution a plea agreement might be obtained with a recommendation for probation. The prosecution was convinced from out–of–court statements made by Downing and his co–defendant Robert Solomon that Downing was an active distributor of cocaine and Solomon was one of his agents. Downing told the law enforcement officers that his supply of cocaine was from "Mexican brothers" in New York named Riccord or Rico.

After consultation between Attorney Gaitens and the prosecution, a plea agreement was entered into that if Downing would cooperate and make contact with Rico in New York and purchase cocaine in cooperation with a D.E.A. undercover agent, the prosecution would recommend probation.

Accordingly, the sentencing date was delayed until October 10, 1978 to enable Downing to perform his agreement of cooperation. However, Downing changed his mind and refused to cooperate. No reason was given, but without doubt the proposed cooperation would have been dangerous.

Since he refused to cooperate. Downing thereupon wanted a trial by jury and retained Attorney J. Roi Jones to request the court to withdraw his plea of guilty. Attorney Gaitens withdrew his appearance. A hearing was held on October 19, 1978. At the hearing, Downing emphasized he had a "valid defense" and the court granted his motion to withdraw his plea of guilty. Trial was fixed for November 15, 1978.

As heretofore stated, at the subsequent trial Downing was convicted, appealed and now moves to vacate the sentence and re–enter his plea of guilty on the ground that his trial attorney Jones provided ineffective assistance.

The decision to withdraw his plea of guilty and stand trial was an independent decision on the part of Downing when he declined to perform the agreed–upon cooperation with the D.E.A. agents. He emphasized to the court he had a valid defense which he did not disclose to the court or to the prosecution. At the trial Downing and his counsel tried to convince the jury that Downing was merely trying to do a favor for his friend, Solomon, by going to a certain house, receiving a bag for Solomon containing marijuana, and delivering it to

Solomon. However, when Downing opened the bag to make a marijuana "joint"[1] he was surprised that the contents were cocaine. Later he delivered the cocaine to Solomon who sold it to undercover agents for $1,600 of which $1,200 was given to Downing.[2]

Attorney Jones did his best in the cross–examination of the prosecution witnesses and of Solomon, who had pleaded guilty and testified for the prosecution. He tried hard to persuade the jury that Downing did not have a specific intent to violate the law, but was innocently helping a friend, Solomon, who misled him into believing he was obtaining a bag of marijuana for delivery to Solomon.

The court concludes that despite the difficult circumstances, in aid of his client's desire to avoid imprisonment, Attorney Jones exercised the customary skill and knowledge which normally prevailed in the Western District of Pennsylvania in 1978. *Moore v. United States,* 432 F.2d 730 (3d Cir. 1970); *United States v. Williams,* 615 F.2d 593, 594 (3d Cir. 1980). He was an experienced criminal lawyer practicing in the Pennsylvania courts since 1972. In no event can it be found that he was inefficient or incompetent in failing to recommend to Downing that he should not testify. Downing's only hope of acquittal, in view of the overwhelming evidence against him, was to convince the jury by his testimony that he was innocently doing his friend Solomon a favor, and did not knowingly take possession of cocaine, thus minimizing his role in possessing and delivering the drug, and thereby gain the sympathy of the jury. *Cf. United States ex rel. Tillman v. Alldredge,* 350 F.Supp. 189, 196 (E.D.Pa. 1972).

Attorney Jones did not persuade Downing to withdraw his plea of guilty. This decision was independently made by Downing after refusing to cooperate with the prosecution.

After he refused to cooperate, despite his obvious guilt, Downing insisted upon a jury trial because he "thought he could win." Lawyers who undertake a jury trial on behalf of a guilty client are not to be adjudged ineffective or incompetent when the verdict is guilty. Juries sometimes do acquit defendants despite the fact that they are guilty.

In no event can it be found from the facts that the trial was a farce, a sham, or a mockery of justice. The trial did not shock the conscience of this court.

The burden on Downing to establish a claim of ineffective assistance of counsel is heavy, and neither hindsight nor success is the measure. *United States ex rel. Turner v. Cuyler,* 443 F.Supp. 263 (E.D.Pa.1977), aff'd 595 F.2d 1215 (3d Cir. 1979); *United States v. Hines,* 470 F.2d 225 (3d Cir. 1972); *United States v. Varga,* 449 F.2d 1280 (3d Cir. 1971). It does not mean victorious or errorless counsel. *Brady v. United States,* 433 F.2d 924 (10th Cir. 1970); *United States ex rel. Turner v. Cuyler, supra.*

Because the defense is unsuccessful, and because Downing concludes his attorney did not meet his standards of effectiveness does not destroy the essential integrity of the proceedings nor constitute a denial of due process. From the evidence, it appears that Downing independently determined that in order to escape jail he must withdraw his plea of guilty and stand trial, believing he would be acquitted. From the record, it appears that Downing was a difficult client in a difficult case, and it is doubtful that any counsel could have satisfied his personal standards of effectiveness, i. e, acquittal.

Much can be said of alleged errors made during a trial. Monday morning quarter–backing is not only popular among sports fans; but we often hear it at the bar. The Constitution does not guarantee a perfect trial by a perfect defense counsel. On balance, we think the representation of Downing by Attorney Jones was fair and as effective as possible in the face of the ad-

---

1. Trial transcript p. 218.

2. Trial transcript pp. 43–44, 66–67, 127, 233–234.

verse circumstances; his services were well within the range of normal competency.

An appropriate order denying the Motion to Vacate Sentence will be entered.