**UNITED STATES of America ex rel. John WILLIAMS, Petitioner,**

v.

**Richard DeROBERTIS, Warden, Stateville, and Attorney General of the State of Illinois, Respondents.**

No. 81 C 2086.

United States District Court, N. D. Illinois, E. D.

May 6, 1982.

Ann C. Tighe, Cotsirilos & Crowley, Ltd., Chicago, Ill., for petitioner.

Marcia Friedl, Melbourne A. Noel, Jr., Asst. Attys. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

MARSHALL, District Judge.

On May 13, 1975, petitioner John Williams was convicted in a bench trial in the Circuit Court of Cook County, Illinois. Petitioner was found guilty of armed robbery, in violation of Ill.Rev.Stat., ch. 38, § 18–2 (1979), and unlawful use of a weapon, in violation of *id.* § 24–1(a)(7). On June 10, petitioner was sentenced to a term of incarceration of & from 20 to 45 years on the armed robbery charge and a concurrent term of one to three years incarceration on

the weapon charge. On direct appeal to the Appellate Court of Illinois, petitioner's conviction was affirmed. *People v. Williams,* 47 Ill.App.3d 798, 8 Ill.Dec. 177, 365 N.E.2d 415 (1977). The Illinois Supreme Court subsequently denied petitioner's petition for leave to appeal. Petitioner then sought post-conviction relief from the trial court, which was denied on January 29, 1980. On April 14, 1981, petitioner filed a petition for habeas corpus with this court, seeking relief under 28 U.S.C. § 2254 (1976). Through court appointed counsel, petitioner filed an amended petition for habeas corpus on November 2, 1981. Respondents have moved to dismiss the amended petition. Since petitioner has exhausted his available state remedies and properly preserved his claim for review by raising it in the state courts, this court must decide the legal question which all parties agree is presented by the petition: did petitioner validly waive his right to trial by jury under the sixth and fourteenth amendments to the Constitution of the United States when he was tried by the court without a jury in the Circuit Court of Cook County?

I

The relevant facts are not in dispute. At some point on or before June 10, 1975, petitioner signed a printed form of "jury waiver." The form is undated, and contains only the caption of petitioner's case, the printed words "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing," petitioner's signature, and the handwritten notation "filed/June 10, 1975/Morgan M. Finley/Clerk of the Circuit Court."

At the time the "jury waiver" was signed by petitioner, the following colloquy took place between the presiding judge, petitioner, his codefendants Willie Nelson and Victor Watts, and their counsel.

MR. VISHNY [counsel for petitioner]: In behalf of John Williams, it will be a bench.

MR. ISRAELSTAM [counsel for Watts]: In behalf of Watts, it will be a bench.

MR. LIVINGSTON [counsel for Nelson]: In behalf of Willie Nelson it will be a bench also.

. . . . .

THE COURT: Let the record show that Mr. William Nelson, is that you?

MR. NELSON: Yes.

THE COURT: You have read the jury waiver?

MR. NELSON: Yes.

THE COURT: Do you know what a jury trial is? That is, where 12 people of this County will be put in a box, and they will hear the evidence in this matter, and they will determine your innocence or guilt in accordance with the law that the Court will give them and instruct them in the matters before the Court? Do you understand that?

MR. NELSON: Yes.

THE COURT: Do you understand that you have a right to a jury or you have a right to waive that jury? Do you understand that?

MR. NELSON: Yes

THE COURT: And Mr. Watts, do you understand that you have a right to a jury trial? Do you understand that?

MR. WATTS: Yes, sir.

THE COURT: And have you read this jury waiver?

MR. WATTS: Yes.

THE COURT: Have you read it where you say, I the undersigned do hereby waive the jury and submit the cause to the Court? Do you understand that?

MR. WATTS: Yes.

THE COURT: You want the Court to hear this matter, and you are waiving the jury?

MR. WATTS: I want a bench trial.

THE COURT: You want a bench trial?

MR. WATTS: Yes.

THE COURT: You understand that when you take a bench trial you waive your jury? Do you understand that?

MR. WATTS: Yes.

THE COURT: All right. Let the record show that the defendant, Mr. Victor Watts, has executed a jury waiver in the presence of his counsel.

And you, Mr. Williams, do you know what a jury trial is? I just explained it to Mr. Nelson and Mr. Watts.

MR. WILLIAMS: Yes.

THE COURT: And you know that a jury trial is 12 people sitting in the box who will determine your innocence or guilt? You understand that?

MR. WILLIAMS: Yes.

THE COURT: And you know that you have this right, or you have the right to have the court hear your case? Which do you wish?

MR. WILLIAMS: Bench.

THE COURT: Have you read the jury waiver, which states, I, the undersigned, do hereby waive a jury trial and submit the above entitled cause to the Court. Have you read that?

MR. WILLIAMS: Yes.

THE COURT: Do you understand it?

MR. WILLIAMS: Yes.

THE COURT: Let the record show that Mr. Williams has executed a jury waiver.

Let the record reflect that the defendants in open court accompanied by their counsel have executed jury waivers and they thereby waive their rights to a jury trial.

II

The right to trial by jury guaranteed by the sixth amendment, being fundamental to the American concept of justice, is applicable to the states through the due process clause of the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Because this right is fundamental, it is not to be dispensed with routinely. This much was established by *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), where the Court first indicated that the jury right could only be waived by a conscious and deliberate decision of the defendant himself.

Trial by jury is the normal and, with occasional exceptions, the preferable

mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity. *Accord, Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969). Thus *Patton* cautions trial courts to take care to ensure that waivers of the right to jury trial are "express and intelligent".

■ The care demanded by *Patton* must be coupled with the high standard for waiver of a constitutional right which has been required and applied by the Supreme Court. The Court has made it clear that waiver of a constitutional right is not to be readily found: a strong showing is required to establish such a waiver.

It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that "we do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment of a known right or privilege. *Johnson v. Zerbst*, 304 U.S.

458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938) (footnotes omitted) (quoting *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393 [57 S.Ct. 809, 81 L.Ed. 1177] (1937) and *Hodges v. Easton*, 106 U.S. 408, 412 [1 S.Ct. 307, 310, 27 L.Ed. 169] (1882)).

■ The waiver standard formulated in *Johnson v. Zerbst*[1] governs waiver of the right to trial by jury. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275–78, 63 S.Ct. 236, 240–41, 87 L.Ed. 268 (1942).

■ As it has evolved, the waiver standard of *Johnson v. Zerbst* has developed at least two components. A waiver must be both voluntary in the sense of freely made, and it must be intelligent, in the sense of having knowledge of its nature and effect. "Waivers of constitutional rights must not only be voluntary, but must also be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). The Constitution is violated, and relief under § 2254 is available, unless a waiver is the product of a voluntary and intelligent act of the defendant himself. The fact that the defendant is represented by counsel who waives his right to a jury trial is insufficient; the defendant himself must make a voluntary and intelligent decision to waive. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235–40, 93 S.Ct. 2041, 2051–54, 36 L.Ed.2d 854 (1973); *Tollett v. Henderson*, 411 U.S. 258, 265, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275–78, 63 S.Ct. 236, 240–41, 87 L.Ed. 268 (1942); *United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975);

---

1. The Court continues to treat *Johnson v. Zerbst* as the leading case on waiver of constitutional rights pertaining to trial. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235–40, 93 S.Ct. 2041, 2051–54, 36 L.Ed.2d 854 (1973); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *Carnley v. Cochran*, 369 U.S. 506, 514–15, 82 S.Ct. 884, 889–90, 8 L.Ed.2d 70 (1962).

*Government of the Virgin Islands v. Parrott*, 476 F.2d 1058, 1061 (3d Cir.), *cert. denied*, 414 U.S. 871, 94 S.Ct. 97, 38 L.Ed.2d 90 (1973); *Estrada v. United States*, 457 F.2d 255, 256 (7th Cir. 1972); *United States v. Radford*, 452 F.2d 332, 334 (7th Cir. 1971); *Chalk v. Beto*, 429 F.2d 225, 227–28 (5th Cir. 1970); *Gauthier v. Burke*, 402 F.2d 459, 462 (7th Cir. 1968); *United States v. Conforte*, 457 F.Supp. 641, 660 (D.Nev.1978), *aff'd*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States ex rel. Tillman v. Alldredge*, 350 F.Supp. 189, 191 (E.D.Pa.1972); *Little v. Smith*, 347 F.Supp. 427, 428 (N.D.Ga. 1971). *Cf. Henderson v. Morgan*, 426 U.S. 637, 650, 96 S.Ct. 2253, 2260, 49 L.Ed.2d 108 (1976) (Powell, J., concurring) (Constitution requires that the choice to plead guilty be the defendant's, not his counsel's.); *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (Counsel has no power to enter a guilty plea for a client who objects.).[2]

### III

■■■ In this case, petitioner does not argue that his waiver of jury trial was not voluntary. Petitioner's claim is addressed to the second aspect of the waiver inquiry, the requirement that the waiver be knowing and intelligent. To be knowing and intelligent, a waiver of the right to jury trial must be done with an understanding of the "nature of the right." *Estrada v. United States*, 457 F.2d 255, 256 (7th Cir. 1972); *see Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969). A waiver of the jury right requires that the defendant understand the character of the right he is waiving. *See United States v. Caston*, 615 F.2d 1111, 1115 (5th Cir.), *cert. denied*, 449 U.S. 831, 101

S.Ct. 99, 66 L.Ed.2d 36 (1980); *United States v. David*, 511 F.2d 355, 360–62 (D.C. Cir. 1975); *United States v. Conforte*, 457 F.Supp. 641, 660–61 (D.Nev.1978), *aff'd*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).[3]

■■■ In order to sustain petitioner's waiver of his right to jury trial, the court must examine the record before the state court to determine if it discloses that petitioner's waiver was voluntary and intelligent. *See Brady v. United States*, 397 U.S. 742, 747 n.4, 90 S.Ct. 1463, 1468 n.4, 25 L.Ed.2d 747 (1970); *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Waiver may not be inferred from a silent record; the record must affirmatively disclose the requisite voluntariness and intelligence. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *United States ex rel. Grundset v. Franzen*, 675 F.2d 870 at 877 (7th Cir. 1982); *United States ex rel. Gentry v. Circuit Court of Cook County*, 586 F.2d 1142, 1145 (7th Cir. 1978); *United States v. Taylor*, 498 F.2d 390 (6th Cir. 1974) (per curiam); *United States ex rel. Baez v. Circuit Court of Cook County*, 395 F.Supp. 1285, 1287 (N.D. Ill.1975); *United States ex rel. Tillman v. Alldredge*, 350 F.Supp. 189, 191 (E.D.Pa. 1972). Respondent cites *United States ex rel. Gentry v. Circuit Court of Cook County*, 586 F.2d 1142 (7th Cir. 1978) correctly for the proposition that the trial judge need not interrogate the defendant in order to ensure that his jury waiver is voluntary. *Accord, United States v. Scott*, 583 F.2d 362 (7th Cir. 1978); *United States v. Kidding*, 560 F.2d 1303, 1311–12 (7th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). However, this does not mean

---

**2.** *See generally Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); Comment, *Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest*, 54 Calif.L.Rev. 1262, 1266–76 (1966).

**3.** *See generally Neal v. Wainwright*, 512 F.Supp. 92, (M.D.Fla.1981); Dix, *Waiver in Criminal Procedure: A Brief for More Careful*

*Analysis*, 55 Tex.L.Rev. 193, 229–42 (1977); Saltzburg, *Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty*, 76 Mich.L.Rev. 1265, 1301–05 (1978); Tigar, *The Supreme Court, 1969 Term —Foreward: Waiver of Constitutional Rights: Disquiet in the Citadel*, 84 Harv.L.Rev. 1, 22–24 (1970).

that there need not be an affirmative indication that the waiver was voluntary and intelligent. To the contrary, *Gentry* stated that the rule of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) that there must be an affirmative showing of voluntariness and intelligence if a waiver is to be sustained on federal habeas review, must be followed when evaluating state court jury waivers. *See* 586 F.2d at 1146.[4] There are ample reasons for requiring this showing. An affirmative indication, in the record or otherwise, that the waiver was voluntary and intelligent, obviates the need for post hoc litigation over the question of whether the defendant's state of mind at the time of the waiver was such as to invalidate the waiver. *See Dix, Waiver in Criminal Procedure: A Brief for More Careful Analysis*, 55 Tex.L.Rev. 193, 206–08 (1977).[5] This in turn enhances the finality of criminal convictions, the deterrence of future offenders, and repose for the community, generated by such convictions.

### IV

Since petitioner makes no claim that his jury waiver was involuntary, this case devolves to the question of whether the record currently before the court contains an affirmative indication that petitioner's jury waiver was knowing and intelligent. Petitioner's signed jury waiver sheds no light at all on this question, since the form does not explain anything about the character of the sixth amendment jury right. If the jury waiver is to be sustained, it must be on the basis of petitioner's colloquy with the trial judge.

In order to answer the question posed by this case, it is necessary to define what a defendant must know about the nature of the jury right. Some guidance on this score is provided by *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981). In *Delgado*, the court of appeals, acting pursuant to its supervisory power over the lower federal courts, stated what it considered to be the essential nature of a jury right in federal criminal trials. The court stated that, in order to ensure that jury waivers are voluntary and intelligent, the court would

take this opportunity to advise trial courts that they should explain that [1] a jury is composed of 12 members of the community, [2] that the defendant may participate in the selection of the jurors, and [3] that the verdict of the jury is unanimous. The court should inform the defendant that [4] if he waives a jury, the judge alone will decide guilt or innocence. After informing the defendant of these factors, the trial court should then ascertain whether the defendant wishes to waive his right to a jury trial. Only after this type of inquiry will the court be able to determine that the defendant understands his right to a jury trial and the consequences of his waiver. *Id.* at 890.

The transcript of petitioner's jury "waiver" indicates that he was informed of points one and four above. We must decide whether the record must reveal that petitioner was informed of points two and three, or some variant thereof, in order for his jury waiver to have been knowing and intelligent and therefore valid.

### V

There are two important ways in which a defendant may participate in the selection of the jury that will try him. The first is the right to have potential jurors questioned, and the second is the right to challenge the seating of potential jurors. This, we take it, is what the *Delgado* court meant

---

4. While *Boykin* involved a guilty plea rather than only a jury waiver, it stated that the rights waived by a guilty plea, including the right to a jury trial, may not be validly waived on a silent record. *See* 395 U.S. at 243, 89 S.Ct. at 1712. *Gentry* applied *Boykin* to the case where only the right to jury trial, and not also the privilege against self incrimination and right to confrontation, was waived.

5. Requiring careful procedures when waiving the jury right is also demanded by the due process clause's demand for formality when fundamental rights are at stake. *See* Rubin, *Toward a General Theory of Waiver*, 28 U.C. L.A. L.Rev. 478, 546–48 (1981).

when it referred to participation in the selection of a jury. However, Delgado was not a constitutional holding; its rationale is only applicable on federal habeas review if the Constitution secures the right to participate in the selection of one's jury.

 It is well-settled that the sixth and fourteenth amendments secure the right to an impartial jury free from actual bias or prejudice. *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2035–2036, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). In *Irvin v. Dowd*, the Court held that once juror bias is established, the Constitution secures the defendant's right not to be tried by the biased jurors. The necessary corollary is that the Constitution secures the right to challenge a prospective juror for cause. Since the seating of a biased juror is unconstitutional, the defendant has a right to challenge that seating.[6] This means that the Constitution secures the right to challenge jurors for cause.[7] Once this right is granted, it is also well-settled that the defendant has a constitutional right to have prospective jurors questioned with respect to bias on any bona fide issue in the case. *See Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *United States v. Allsup*, 566 F.2d 68, 70–71 (9th Cir. 1977); *United States v. Jackson*, 542 F.2d 403, 413 (7th Cir. 1976). *Cf. Smith v. Phillips*, —— U.S. ——, ——–——, 102 S.Ct. 940, 945–46, 71 L.Ed.2d 78 (1982) (Constitution secures the opportunity to prove juror bias).

 The opportunity to question prospective jurors and challenge them for cause is no mere collateral gloss on the jury right. *See Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion) ("*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able to impartially follow the court's instructions and evaluate the evidence cannot be fulfilled."). The central feature of the jury right is that it allows the defendant to interpose an impartial jury between himself and the possibly corrupt or biased judge or prosecutor. *See Brown v. Louisiana*, 447 U.S. 323, 330, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1980) (plurality opinion); *Burch v. Louisiana*, 441 U.S. 130, 135, 99 S.Ct. 1623, 1626, 60 L.Ed.2d 96 (1979); *Ballew v. Georgia*, 435 U.S. 223, 229, 98 S.Ct. 1029, 1033, 55 L.Ed.2d 234 (1978) (opinion of Blackmun, J.); *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970); *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). This purpose would be completely undermined if the defendant could not challenge the seating of biased jurors, or avail himself of procedural devices which enable him to prove cause for challenge. Therefore, the right to participate in the selection of one's jury is essential to preserving the jury as a safeguard against bias and oppression. A defendant ignorant of this right cannot knowingly and intelligently weigh the value of this safeguard. Accordingly, we hold that the right to participate in the selection of the jury mentioned in *Delgado* is of constitutional dimension, and that since there is no affirmative indication that the defendant was informed of this right, his waiver of jury trial was not knowing and intelligent, and, upon the present record, may not stand.

6. Similarly, the defendant has the right to challenge the exclusion of any identifiable group in the community, *Swain v. Alabama*, 380 U.S. 202, 203–05, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965), or the exclusion of neutral and impartial jurors, *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

7. In contrast, the Constitution does not secure a right to peremptory challenges. *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1966).

## VI

■■■■ The sixth and fourteenth amendments do not secure the right to a unanimous jury. *See Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). Petitioner did have a state-created right to a unanimous jury. However, waiver of that right is governed by state law, and in the absence of a showing that the state law of waiver is arbitrary or unreasonable, the waiver of that right under state law may not be challenged. *See United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 669–70 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980).

■■■■ While unanimity is not required, neither does it appear that a simple majority will satisfy the sixth and fourteenth amendments. Especially when serious crimes are being tried, as in the present case, it appears that a "substantial majority" of the jury must vote to convict for a conviction to be obtained. *See Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979); *Johnson v. Louisiana,* 406 U.S. 356, 362–64, 92 S.Ct. 1620, 1624–25, 32 L.Ed.2d 152 (1972); Note, *Criminal Law—Jury—Unanimous Jury Verdict Is not Constitutionally Required in State Criminal Cases,* 1973 Wis.L.Rev. 926, 930–31.[8] "[T]here do exist size and unanimity limits that cannot be transgressed if the essence of the jury trial is to be maintained." *Brown v. Louisiana,* 447 U.S. 323, 331, 100 S.Ct. 2214, 2221, 65 L.Ed.2d 159 (1980) (plurality opinion). A central purpose of the jury is to act as the "conscience of the community," *Witherspoon v. Illinois,* 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968), to express what can be considered a legitimate judgment of the community. *See Brown v. Louisiana,* 447 U.S. 323, 330, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1980) (plurality opinion); *Burch v. Louisiana,* 441 U.S. 130, 135, 99 S.Ct. 1623, 1626, 60 L.Ed.2d 96 (1979); *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970). When the jury is closely divided, it is much more difficult to consider its verdict a judgment of the community. It instead resembles much more the product of fortuitous selection of a particular juror or jurors, whose possibly idiosyncratic view of the case may have tipped the balance in favor of or against conviction. The requirement of a supermajority is essential to maintaining the jury's function as the voice of the community. Therefore, the right cannot be waived in an intelligent fashion without knowledge of the supermajority requirement, which is an essential part of the nature of the jury right. Since there is no affirmative indication in the record that petitioner knew or was informed of the applicable supermajority requirement for conviction by a jury, his waiver of the jury right was not knowing and intelligent, and, upon the present record, may not stand.

## VII

■■■■ The Appellate Court of Illinois concluded that petitioner had validly waived his right to trial by jury. However, the court relied on only two facts: that petitioner's counsel stated "it will be a bench" to the trial court in petitioner's presence, and that petitioner answered "yes" when asked by the court if he had read the jury waiver. *See* 47 Ill.App.3d at 802, 8 Ill.Dec. at 182, 365 N.E.2d at 418. While these facts may indicate that the waiver was voluntary, they give no indication that it was knowing and intelligent; that petitioner understood the character of the jury right. *Boykin* and its progeny demand that the record affirmatively disclose that the waiver was intelligent, yet the record contains no indication that the nature of the jury right was explained to petitioner. Because there is nothing in the record to indicate that petitioner knowingly and intelligently waived his jury right, the finding of

8. In *Johnson,* not only did the Court expressly refer to the presence of a "substantial majority," but five justices expressly stated that the sixth and fourteenth amendments require at least that degree of consensus among the jury. *See Johnson v. Louisiana,* 406 U.S. at 366, 92 S.Ct. at 1635 (Blackmun, J., concurring); *id.* at 380–94, 92 S.Ct. at 1642–50 (Douglas, J., dissenting); *id.* at 395–96, 92 S.Ct. at 1650–51 (Brennan, J., dissenting); *id.* at 397–99, 92 S.Ct. at 1626–27 (Stewart, J., dissenting); *id.* at 399–403, 92 S.Ct. 1651–1653 (Marshall, J., dissenting).

the state court is not fairly supported by the record, and is not entitled to deference. *See* 28 U.S.C. § 2254(d)(8) (1976). Moreover, the question of waiver involves an application of legal standards governing waiver. As a result, it is not simply a factual determination, but a mixed question of law and fact, on which a federal habeas court need not defer to the state court. *See United States ex rel. Ross v. Franzen*, 668 F.2d 933, 937–38 (7th Cir. 1982). *See also United States ex rel. Grundset v. Franzen*, 675 F.2d 870 at 878–79 (7th Cir. 1982).

In this case, the state court applied an incorrect legal standard, since a valid waiver cannot be inferred either from the acts of counsel or merely from the fact that the defendant indicates he will voluntarily waive his rights. A valid waiver requires that the record affirmatively reveal that the defendant's act was knowing and intelligent, that he understood the character of the right he was waiving. As a result, the state· court's findings will not be accorded the deference to which they would otherwise be entitled under § 2254(d).

It might be argued that the result we reach in this case is a triumph of form over substance. If the error alleged were merely technical or nonconstitutional, petitioner might not be entitled to relief. *Cf. United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (nonconstitutional and technical violations of Fed.R. Crim.P. 11 not cognizable on federal prisoner's petition for habeas review); *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979) (en banc) (same). But it is a fundamental principle of sixth amendment law that a waiver of the right to trial by jury must be knowing and intelligent. It is equally fundamental that knowledge and intelligence cannot be inferred from a barren record. They must affirmatively appear on the record. Here, the record contains no indication that petitioner was informed of his right to participate in the

selection of the jury, or of the applicable supermajority requirement. Yet these two facts are not mere incidents collateral to the main right to a jury; they are at the core of that right. What makes a jury trial unique from a bench trial is the interposition of an impartial body which speaks as the voice of the community between the court and the defendant. It is impossible for petitioner to have weighed the value of this safeguard and made a knowing and intelligent decision to forego it unless he knew how the safeguard operates. It is the supermajority and participation requirements that make the jury more than merely an appendage of the court, and which ensure that the verdict is returned by a truly impartial body which speaks for the community as a whole. Respect for the value of this guarantee requires that waivers be more than "a mere matter of rote," as the *Patton* Court wrote, that someone, at some point, bothers to explain to the defendant the unique value of this safeguard which is indeed "essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants." *Duncan v. Louisiana*, 391 U.S. 145, 158, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968). Such caution not only protects the value of the sixth amendment right,[9] but will go a long way toward ensuring that convictions cannot be collaterally attacked, thereby enhancing the finality of the criminal law. As Chief Justice Warren wrote in a related context,

> It is therefore not too much to require that ... district judges take the few minutes necessary to inform [defendants] of their rights and to determine whether they understand the action they are taking. *McCarthy v. United States*, 394 U.S. 459, 472, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969).

 Here, the record contains no indication that petitioner was informed of the applicable supermajority or participation re-

---

**9.** *See* Rubin, *supra* note 5, at 489–90:

Although waivers decrease the costs of the decision-making process and increase its flexibility, they also have the potential to be rather dangerous. Waivers can be dangerous for precisely the same reason that they

can be valuable: they constitute alternatives to the protections provided by the plenary assertion of one's rights. Once it is possible to waive one's rights, protections become considerably less certain.

quirements. Moreover, respondents have not submitted affidavits or other materials indicating that petitioner knew of these protections. Since an intelligent waiver

**10.** In *United States v. Spears,* 671 F.2d 991 (7th Cir. 1982), the court held that the defendant had waived his right to present closing arguments through counsel when counsel had been provided with a clear opportunity to make a closing argument and failed to do so. It is true that waiver in *Spears* was predicated on what was essentially a silent record. However, the court noted that while "[w]aiver of a fundamental right may not be lightly presumed, [ ] some rights are more likely to be foregone as a matter of strategy than others." *Id.* at 993. Waiver of the right to closing argument is the sort of right that need not be waived by the defendant himself on the record, since the defendant is ill-equipped to understand and intelligently waive the right; its use and value can only be weighed by one with legal expertise. *See Geders v. United States,* 425 U.S. 80, 88, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1975) ("the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process"); *see also Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). It is unrealistic to consider the right to closing argument as one that the defendant, as opposed to his counsel, should be expected to personally assert or waive. However, nothing in *Spears* casts any doubt on the well-settled principle, expressed in *Boykin* and elsewhere, that the right to trial by jury is a right which can only be personally waived by the defendant himself, and that the record must affirmatively reflect that the waiver was voluntary and intelligent.

This conclusion is reinforced by a post-*Spears* case, United States *ex rel. Grundset v. Franzen,* 675 F.2d 870 (7th Cir. 1982) where the court reaffirmed the necessity under *Boykin* that the record affirmatively disclose a voluntary and intelligent waiver, *see* slip op. at 876–880. Moreover, *Grundset* indicates that a habeas petitioner demonstrates a prima facie *Boykin* violation by showing that a transcript of his plea exists, and does not affirmatively disclose that the waiver was intelligent. *See id.* at 879. At that point, the burden shifts to the state to raise an issue of fact as to the intelligence of the plea based on materials outside the state court record. *Id.* at 877–78. Here, the state has not raised an issue of fact; its reliance has been exclusively on the transcript.

**11.** Respondents correctly refrain from arguing that petitioner's claim can be defeated by the harmless error doctrine. It cannot. *See, e.g.,*

cannot be presumed on a silent record,[10] petitioner has demonstrated on the record currently before the court, that he is entitled to relief.[11]

*Duncan v. Louisiana,* 391 U.S. 145, 162, 88 S.Ct. 1444, 1454, 20 L.Ed.2d 491 (1968); *Badger v. Cardwell,* 587 F.2d 968, 977 n. 7 (9th Cir. 1978).

A few comments are in order regarding the cases respondents rely on. *United States ex rel. Gentry v. Circuit Court of Cook County* supports the result we reach. There, the state was able to prove, through the testimony of the petitioner's trial counsel, that petitioner was aware of the character of the jury right and intelligently waived it. Thus, the record in *Gentry,* unlike the record here, was far from silent on the question of the intelligence of the waiver. *See* 586 F.2d at 1143, 1146.

*United States ex rel. Burnett v. Illinois,* 619 F.2d 668 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980) is completely inapposite. There petitioner never did waive his sixth amendment right to a jury trial. The only waiver was of petitioner's state right to a 12 person jury, since petitioner was tried by a jury of eleven. Since no waiver of a federal constitutional right was at issue, the court merely held that Illinois waiver law was not so arbitrary or unreasoned as to amount to a denial of due process.

In *United States v. Kidding,* 560 F.2d 1303, 1311–12 (7th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977), the only claim raised was that there was no signed document in the record indicating that the petitioner had waived his jury right. The government merely supplemented the record on appeal, and the court held that the record had become sufficient to support a finding of waiver. No contention was made that the waiver had not been intelligent, only that a signed waiver was not present. To similar effect is *United States v. Echevarria,* 561 F.2d 26 (7th Cir. 1976) (per curiam), where no contention was made that the waiver was not intelligent. All that was held was that the court need not conduct an interrogation of the defendant, at least where "the defendant admits that he is not claiming that he did not know what comprised a jury trial, or that he did not understand what he was doing." *Id.* at 27. No similar admission is made by petitioner in the instant case.

Respondents are correct that the above cases stand for the proposition that the Constitution does not require the trial court to interrogate a defendant prior to a jury waiver. However, this court has not held to the contrary. Our holding is simply that somewhere in the record,

Respondents' motion to dismiss is denied. Respondents are ordered to answer the petition for habeas corpus within 14 days. The court directs petitioner to move for summary judgment within a short date.

there must be an affirmative indication that the defendant understood the essential character of the jury right and waived it intelligently. Interrogation is one, but by no means the only way to satisfy this requirement.

Judge Leighton's opinion in *United States ex rel. Hoover v. Napoli*, No. 81 C 865 (N.D.Ill. Jan. 26, 1982), *leave to appeal denied*, No. 82–1105 (7th Cir. March 9, 1982), is contrary to the result we reach. We respectfully decline to follow it. Our holding, however, does not create a new conflict in this district, since a contrary view to that contained in the *Hoover* case had already been expressed by Judge Marovitz in *United States ex rel. Baez v. Circuit Court of Cook County*, 457 F.Supp. 1285 (N.D.Ill.1975). There, the court applied *Boykin* to jury waivers and held the Illinois state court jury waiver procedure to be constitutionally defective.