(g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by Sec. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

(h) Effective Date and Pending Cases

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eric Charles MARTIN, a/k/a Mickey Milton Arrington, Defendant-Appellant.**

No. 82–3152.

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs Nov. 9, 1982.

Decided April 4, 1983.

Eric C. Martin, pro se.

Frederick H. McDonald, Asst. U.S. Atty., Toledo, Ohio, for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge.

On May 15, 1980, a three count indictment was filed against defendant-appellant Eric Charles Martin, a/k/a Mickey Arrington, and two co-defendants. Count one alleged that on April 24, 1980, the defendants kidnapped two females in Newark, New Jersey and transported them to Ohio in violation of 18 U.S.C. § 2 (aiding and abetting). The second count alleged that Martin used handguns to commit the kidnappings in violation of 18 U.S.C. § 924 and § 2. The last count alleged that the defendants transported a stolen 1977 Buick from New Jersey to Ohio in violation of 18 U.S.C. § 2312 and § 2.

On June 3, 1980, a United States Magistrate ordered that the Court Diagnostic & Treatment Center conduct a mental examination of Martin. The psychiatric report, dated June 26, 1980, concludes that Martin was sane, possessed average intelligence, and that he had previously been incarcerated in prisons and mental institutions. The report also contains a detailed description of Martin's experiences in a psychiatric hospital as an adolescent. On August 8, 1980, the district court found Martin competent to stand trial.

On September 8, 1980, just prior to the beginning of trial, the following discussion occurred in open court:

THE COURT: Are counsel ready to proceed?

MR. TOMCZAK: Yes, your Honor.

MR. McDONALD: Yes, Your Honor.

THE COURT: I have the impression that there is some question of a waiver of jury trial in this case.

MR. TOMCZAK: Yes, your Honor.

THE COURT: What is the situation about that?

MR. TOMCZAK: First of all, I would like to correct the record. My client's name is Micky Arrington. I believe an alias appeared on the indictment.

Mr. Arrington at this time has been advised of his right to waive trial by jury. At this point, he is willing to waive that right, and the prosecution is willing to consent to the matter being tried to this Court.

MR. McDONALD: That is correct, your Honor.

THE COURT: Is that a fact, Mr. Arrington?

MR. ARRINGTON: Yes sir.

THE COURT: Do we have a written waiver form? I usually prefer to have a written jury waiver if possible.

MR. McDONALD: Does the Clerk have one?

THE COURT: The Clerk hasn't one, apparently. She will get one from her office. We will await her return.

(Thereupon, a jury waiver form was signed by the parties.)

THE CLERK: If the Court please, the clerk has received the waiver of jury form.

The defendant, his lawyer, and the Assistant United States Attorney then signed a jury waiver form which recited that the parties and the district court consented to the jury trial waiver.

The following facts were developed at the bench trial. Martin and a co-defendant traveled to Minnesota in the spring of 1980. On March 30, 1980, they kidnapped two women and drove to New Jersey. Apparently the women were released in New Jersey. The defendants remained in New Jersey for about a month. During this period Martin met the second co-defendant.

On April 23, 1980, the three defendants armed themselves and stole a car in Jersey City, New Jersey. The defendants released the driver unharmed after holding a gun to his head for twenty minutes. The defendants then drove the stolen auto to Newark where they kidnapped two prostitutes. At gun point, Martin forced the women to climb into the trunk of the stolen car.

In the early morning hours of April 24, 1980, the defendants abducted and robbed Manuel Taylor at a gas station in Hasbrouck Heights, New Jersey. Manuel Taylor was released somewhere in Pennsylvania. The two women were then allowed to sit in the passenger compartment. The defendants subsequently drove to a motel in Bloomsburg, Pennsylvania. After having sexual intercourse with the women, the group drove to Cleveland, Ohio.

In Cleveland, Martin purchased marijuana and cocaine from a Cleveland drug dealer. Moments later, however, Martin ordered the drug dealer into the stolen car and informed him he was going to be robbed. Ultimately, the drug dealer's money, a watch, a ring, and a golden cocaine spoon were stolen. Both women apparently were present during the robbery. The three defendants, the two women and Williams eventually left Cleveland travelling westbound on the Ohio Turnpike.

The defendants released Williams along the turnpike. He hitched a ride to the next turnpike service plaza and informed the gas station attendant that he had been abducted and robbed. The Ohio State Police were phoned. At 5:30 a.m. on April 25, 1980, a state trooper pursued the stolen auto the defendants had commandeered into a turnpike service plaza. Martin and his two co-defendants fled, but were apprehended a short time later at the service plaza.

On September 9, 1980, the district court found Martin guilty. On November 21, 1980, Martin was sentenced to life on the kidnapping charge, 10 years on the weapons charge, and 5 years on the interstate transportation of a motor vehicle charge. Martin appealed.

This Court vacated the kidnapping conviction and remanded the case for resentencing on the ground that Martin had not been advised of his right to appeal from the kidnapping conviction. On November 25, 1981, Martin filed a motion for a new trial

to be conducted before a jury.[1] This motion was filed after this Court had vacated the original sentence, but before the new sentence was imposed. The district court imposed the same life sentence that had initially been imposed on the kidnapping charge. Martin appeals arguing that his jury trial waiver was not knowing and intelligent.

## I.

### JURY TRIAL

■ Trial by jury is fundamental to American criminal jurisprudence. *See Duncan v. State of Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491, *reh. denied* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968). In fact, the role of the jury as a fact finding body in criminal cases is so indispensible that it is preserved by the Constitution. Article III, § 2 of the Constitution states: "The Trial of all crimes, except in the cases of impeachment, shall be by Jury ...". The Sixth Amendment of the Constitution is even more explicit: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...".

■ The purpose of the jury trial is to prevent governmental oppression and arbitrary law enforcement.[2] *See Duncan,* 391 U.S. at 155, 156, 88 S.Ct. at 1450, 1451; *Singer v. United States,* 380 U.S. 24, 31, 85 S.Ct. 783, 788, 13 L.Ed.2d 630 (1965); *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970). The jury trial gives the defendant "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Id.* The protection a jury affords lies in the interposition of the commonsense judgment of a group of impartial laymen between the defendant and the potentially biased prosecutor and judge. *See Williams,* 399 U.S. at 100, 90 S.Ct. at 1905; *Brown v. Louisiana,* 447 U.S. 323, 331, 100 S.Ct. 2214, 2221, 65 L.Ed.2d 159 (1980). This protection creates a great societal interest in having criminal trials conducted before juries. *See Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *Gannett Co. v. DePasquale,* 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979); *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). In fact, the public interest in jury trials is so great that defendants cannot waive their right to trial by jury except under certain conditions. *See Patton,* 281 U.S. at 298, 312, 50 S.Ct. at 258, 263; *Singer,* 380 U.S. at 33, 34, 85 S.Ct. at 789, 790.

## II.

### WAIVER OF JURY TRIAL

■ Criminal defendants may waive their right to trial by jury only if four conditions are met. First, the waiver must be in writing. Second, the government attorney must consent to the waiver. Third, the trial court must approve the waiver. Fourth, the defendant's waiver must be voluntary, knowing and intelligent.

■ Federal Rule of Criminal Procedure 23(a) requires that the defendant waive his right to trial by jury in writing. Rule 23 states in pertinent part: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing...." This writing requirement is designed to impress the defendant with the gravity of the right relinquished and provide the best evidence of the defendant's voluntary consent. *See Pool v. United States,* 344 F.2d 943, 945 (9th Cir.), *cert. denied* 381 U.S. 832, 86 S.Ct. 73, 15 L.Ed.2d 76 (1965); *United States v. McCurdy,* 450 F.2d 282, 283 (9th Cir.1971).

■ Jury trial waivers are not effective unless the government attorney consents.

---

1. This motion would have been effective had the conviction been reversed and a new trial ordered. *See United States v. Lee,* 539 F.2d 606, 608–610 (6th Cir.1976).

2. The jury trial reflects a profound reluctance to entrust plenary power over life and liberty to one judge or group of judges. *See Duncan,* 391 U.S. at 156, 88 S.Ct. at 1451.

Fed.R.Crim.P. 23(a). *See Patton,* 281 U.S. at 299, 312, 50 S.Ct. at 258, 263; *Singer,* 380 U.S. at 34, 36, 85 S.Ct. at 789, 790; *Adams v. United States ex rel. McCann,* 317 U.S. 269 at 275, 63 S.Ct. 236 at 240, 87 L.Ed. 268. The government attorney is not acting as an advocate when he consents to the jury trial waiver. "The United States Attorney is the representative . . . of a sovereignty whose obligation . . . in criminal prosecution is not that it shall win a case, but that justice shall be done." *See Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *Singer,* 380 U.S. at 37, 85 S.Ct. at 791. The government attorney is charged with the weighty responsibility of insuring that the mode of trial satisfies the public conscience that "fairness dominates the administration of justice." *Adams,* 317 U.S. at 279, 63 S.Ct. at 241. In *Singer* the Supreme Court explained the role of the government attorney as follows:

> The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result.

*Id.* 380 U.S. at 36, 85 S.Ct. at 790.

Occasions, therefore, will arise where the government attorney should not consent to a proposed jury trial waiver.[3]

 The trial court, too, must approve a jury trial waiver. Fed.R.Crim.P. 23(a). *See Patton,* 281 U.S. at 312, 50 S.Ct. at 263; *Adams,* 317 U.S. at 277–78, 63 S.Ct. at 240–241. A trial court has two areas of responsibility. First, it should evaluate both the mental ability of the defendant to make an intelligent decision and the defendant's awareness of the benefits and burdens of electing to forego trial by jury. *See United States ex rel. McCann v. Adams,* 320 U.S. 220, 221, 64 S.Ct. 14, 15, 88 L.Ed. 4 (1943). In *Adams,* the Supreme Court explained the responsibility of the trial court as follows:

The task of judging the competence of a particular accused cannot be escaped by announcing delusively simple rules of trial procedure which judges must mechanically follow. The question in each case is whether the accused was competent to exercise an intelligent, informed judgment—and for determination of this question it is of course relevant whether he had the advice of counsel.

\* \* \* \* \* \*

And whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case. The less rigorous enforcement of the rules of evidence, the greater informality in trial procedure—these are not the only advantages that the absence of a jury may afford to a layman who prefers to make his own defense. In a variety of subtle ways trial by jury may be restrictive of a layman's opportunities to present his case as freely as he wishes. And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury.

*Id.* at 277, 278, 63 S.Ct. at 240, 241.

Second, the trial court bears a substantial responsibility for jealously preserving jury trials, the constitutionally preferred method of disposing of criminal cases. *Patton,* 281 U.S. at 312. A court, therefore, should not lightly approve the jury trial waivers:

> Trial by jury is the normal and with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a consti-

---

**3.** We do not mean to imply that the government attorney erred in consenting to the present jury trial waiver. Our purpose is simply to emphasize that the government's consent should be a considered judgment.

tutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. *And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion,* with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity. *Patton,* 281 U.S. at 312, 50 S.Ct. at 263 (emphasis added). *Accord: Singer,* 280 U.S. at 34, 85 S.Ct. at 789 ("responsible judgment of the trial court"); *Adams,* 317 U.S. at 275, 63 S.Ct. at 240 ("considered approval of the court"); *Patton,* 281 U.S. at 299, 50 S.Ct. at 258 ("in the exercise of its sound discretion to accept the [jury trial] waiver").[4]

 Finally, trial by jury may only be waived where the defendant's decision is voluntary, knowing, and intelligent.[5] *See Patton,* 281 U.S. at 312, 50 S.Ct. at 263; *Adams,* 317 U.S. at 279, 63 S.Ct. at 241. The safeguard afforded by the jury trial right would be lost if either of these factors were not an attribute of every jury trial waiver. The waiver of this important right is effective only where it is not a product of duress or coercion. *See Adams,* 317 U.S. at 275, 280, 63 S.Ct. at 240, 242; *United States v. Scott,* 583 F.2d 362, 363 (7th Cir.1978); *United States v. Marcello,* 423 F.2d 993, 1004 (5th Cir.1970), *cert. denied* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543, *reh. denied* 399 U.S. 938, 90 S.Ct. 2240, 26 L.Ed.2d 809.

 Moreover, a defendant ignorant of the nature of the jury trial right cannot intelligently weigh the value of the safeguard. A defendant, therefore, should have both the mental ability and some knowledge of the jury trial right before he is allowed to waive it. *See Adams,* 317 U.S. at 280, 63 S.Ct. at 242; *United States ex rel. McCann,* 320 U.S. at 221, 64 S.Ct. at 15. A technical knowledge of the jury trial right, however, is not what is required. *Cf. Faretta v. California,* 422 U.S. 806, 837, 95 S.Ct. 2525, 2542, 45 L.Ed.2d 562 (1975). A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right. *See United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1981). Knowledge of these essential attributes is generally sufficient to enable a defendant to make a knowing and intelligent decision.

### III.

### SUGGESTED PROCEDURE

In the present case, Martin maintains that the colloquy concerning the jury trial waiver was "insufficient as a matter of law" to inform the court that he had the capacity and competency to execute the waiver. Martin also complains that he was addicted to narcotics,[6] was not mentally

---

4. We do not suggest that the district court consented to the waiver as a matter of rote. However, we do stress the importance of the court's role in preserving jury trials, the constitutionally preferred mode of trial. *See Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930). Ultimately, trial courts bear the responsibility for ensuring the continued vitality of every defendant's absolute right to demand a jury trial in cases above grade of petty offenses. *Id., Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965).

5. To characterize the waiver of trial by jury as merely a "trial tactic" is to beg the question and ignore the importance of the constitutional right. A defendant can hardly be said to make a strategic decision to waive his jury trial right if he is not aware of the nature of the right or the consequences of its waiver.

6. The present record contains some minimal evidence which addresses Martin's second capacity argument that he was addicted to nar-

competent, and had not been properly informed of the consequences of waiving jury trial. The government responds by noting that Martin has not demonstrated that the waiver was not knowing and intelligent. The government's position is well taken.

■ Martin's contention that he was mentally incompetent at the time he exercised the jury trial waiver is unfounded. Just three months prior to trial, the court ordered that Martin undergo a psychiatric examination. The psychiatric report concluded that Martin had average intelligence and was sane. The trial court did all that was necessary absent subsequent behavior which would indicate the defendant's competency should again be examined. *See Pate v. Smith*, 637 F.2d 1068 (6th Cir.1981). Thus, while mental incompetence is sufficient to impeach a jury trial waiver,[7] Martin possessed the mental capacity to make an intelligent waiver.

■ Martin also contends that his decision was unknowing because his attorney never informed him of the benefits and disadvantages of executing a jury trial waiver. Admittedly, counsel's representations are the only affirmative evidence that Martin was informed of the dimensions of his jury trial right. However, Martin's bald allegations, without supporting affidavits, are simply not enough to impeach counsel's representations. On the present record it appears that counsel for Martin has performed in a manner consistent with that of other criminal attorneys in his profession. *Beasley v. United States*, 491 F.2d 687, 697 (6th Cir.1974). Counsel's competency in other aspects of the trial, Martin's background, the jury waiver form[8] and other factors in the record are sufficient for this Court to conclude the waiver was knowing and intelligent.

The present action is a poignant illustration of the propensity of jury trial waiver cases to spawn collateral litigation and tedious reviews of the record. Collateral proceedings, obviously, are not the preferred procedure for determining the competency of a defendant to execute a jury trial waiver. This determination is most appropriately made *on the record* before the waiver is executed. A contemporaneous colloquy with the defendant before the jury trial waiver is executed could create a record capable of withstanding subsequent challenges, satisfy the court's responsibility, facilitate intelligent appellate review, conserve scarce judicial resources, and enhance the finality of criminal convictions. *See DeRobertis*, 538 F.Supp. at 905.

■ There is no constitutional requirement that a court conduct an on the record colloquy with the defendant prior to the jury trial waiver. *See Scott*, 583 F.2d 362. However, the manifest importance of the jury trial right and the unsatisfactory nature of collateral proceedings compels this Court to make the following suggestion. We implore the district courts to personally inform each defendant of the benefits and burdens of jury trials on the record prior to accepting a proffered waiver. *See, e.g., Witherspoon v. United States*, 633 F.2d 1242, 1247 (6th Cir.1980); *Estrada v. United States*, 457 F.2d 255, 257 (7th Cir.1972); *United States v. David*, 511 F.2d 355, 361 (D.C.Cir.1975); *United States v. Mitchell*, 427 F.2d 1280, 1282 (3rd Cir.1970); *United States v. Hunt*, 413 F.2d 983, 984 (4th Cir. 1969). At a minimum, a defendant should be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, the verdict of

cotics at the time of the waiver. We note, however, that the evidence is insufficient to impeach the jury trial waiver.

7. *See, e.g., United States v. David*, 511 F.2d 355, 361 (D.C.Cir.1975); *Acosta v. Turner*, 666 F.2d 949 (5th Cir.1982); *Hatcher v. United States*, 352 F.2d 364 (D.C.Cir.1965); *Naples v. United States*, 307 F.2d 618, 625 (D.C.Cir.1962).

8. The jury waiver form required by Federal Rule of Criminal Procedure 23(a) is primarily an evidentiary requirement which insures that there is some evidence of the defendant's voluntary consent. It provides minimal evidence on the separate question whether the waiver was knowing and intelligent. *See United States v. David*, 511 F.2d 355, 361 (D.C.Cir. 1975); *United States ex rel. Williams v. DeRobertis*, 538 F.Supp. 899, 905 (N.D.Ill.1982).

the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right. *See United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1981).

Today, we decline to join several courts which have adopted mandatory supervisory rules requiring trial courts to personally interrogate defendants prior to accepting a jury trial waiver. *See United States v. Scott,* 583 F.2d 362, 364 (7th Cir.1978); *Hawkins v. United States,* 385 A.2d 744, 747 (D.C.App.Ct.1978); *Biddle v. State of Maryland,* 40 Md.App. 399, 400–403, 392 A.2d 100, 101–103 (1978); *Ciummei v. Commonwealth,* 378 Mass. 504, 392 N.E.2d 1186, 1189 (1979). We are confident that such a rule will be unnecessary since district courts will take a few moments and inform defendants of their jury trial right *on the record.* These few minutes will avoid the troublesome, time consuming task which confronts this Court today.

### IV.

■ Martin's final contention is that the evidence was insufficient to sustain his conviction. This contention is totally without merit. In reviewing the sufficiency of the evidence claims, this Court must sustain the trial court determination "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). *See United States v. Goble,* 512 F.2d 458, 467 (6th Cir.1975); *United States v. Rosinski,* 487 F.2d 822, 823 (6th Cir.1973). On the present record, there is overwhelming evidence of guilt.

Accordingly, the judgment entered by the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring.

I concur in the majority opinion but write separately to emphasize a single point. The manifest importance of the right to trial by jury and the unsatisfactory nature of collateral proceedings prompts me to urge the formulation of a mandatory supervisory rule requiring trial courts to personally interrogate defendants prior to accepting a jury trial waiver. I would follow the lead of those courts which have adopted such a rule. *See, e.g., United States v. Scott,* 583 F.2d 362 (7th Cir.1978). That approach not only helps to guarantee that all waivers of the essential right to a jury trial will be knowing and intelligent, but does so in a way which most directly advances judicial economy. Rulemaking through the exercise of supervisory powers is particularly appropriate in these circumstances. *See United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981). I find the adoption of a clear rule eminently preferable to a mere exhortation which provides little guidance to the district court.