884 F.2d 579
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George LINTE, Petitioner-Appellant,
v.
Arthur TATE, Jr., Supt., Respondent-Appellee.
 No. 87-3812.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before WELLFORD and RYAN, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 George Linte appeals from the district court's denial of his amended petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Petitioner was indicted by the Cuyahoga County Grand Jury for one count of kidnapping with a firearm specification. Prior to trial, petitioner, who alleges that he cannot read or understand English, signed a waiver form stating that he waived his right to a trial by jury. After a bench trial, petitioner was found guilty of the lesser included offense of abduction with a firearm specification. Petitioner was sentenced to three years for the firearm specification to be followed by four to ten years for abduction.
 
 
 3
 Petitioner filed an amended petition for a writ of habeas corpus in the district court raising the following exhausted claims.[1]
 
 
 4
 1. denial of a jury trial due to an invalid waiver of his right to a jury trial,
 
 
 5
 2. denial of Criminal Rule 29A--judgment of acquittal,
 
 
 6
 3. verdict is against the manifest weight of the evidence.
 
 
 7
 After reviewing the record, the district court denied petitioner's claims that he did not knowingly and voluntarily waive his right to a jury trial and that his conviction was against the weight of the evidence. Petitioner timely appealed and moved for a certificate of probable cause, which was granted by the district court.
 
 
 8
 Petitioner argues (a) that because he does not understand English, the waiver he signed was not valid, and, therefore, he was denied his right to a trial by jury and (b) his conviction for abduction with a gun specification was not supported by sufficient evidence.
 
 II.
 A.
 
 9
 The right to trial by jury is fundamental to American criminal jurisprudence. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968); United States v. Martin, 704 F.2d 267, 271 (6th Cir.1983). The role of the jury as a fact finding body in criminal cases has been made explicit in the Sixth Amendment of the Constitution: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." The right to trial by jury may be waived only when the defendant's decision is voluntary, knowing and intelligent. See Patton v. United States, 281 U.S. 276, 312 (1930). In Adams v. United States, 317 U.S. 269 (1942), the Supreme Court explained that "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Id. at 278. Where a petitioner seeks release by the remedy of habeas corpus, however, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional rights. See e.g., Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938) (right to assistance of counsel).
 
 
 10
 Petitioner argues that the trial court did not adequately inquire into whether he knowingly, intelligently and voluntarily waived his right to a jury trial. He bases his argument on the assertion that since he is a Romanian immigrant, who did not understand the English language or the American system of justice, the trial court could not rely on the written waiver form alone to show that the waiver was knowing and voluntary.
 
 The following colloquy occurred at trial:
 
 11
 THE COURT: Excuse me. By the way, I have got this jury waiver form here.
 
 
 12
 MR. PAPOURAS: Yes, Sir.
 
 
 13
 THE COURT: Signed by the defendant.
 
 
 14
 MR. PAPOURAS: Yes, sir.
 
 
 15
 THE COURT: It says, "I, George Linte, the defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a judge of the court in which said cause may be pending.
 
 
 16
 "I fully understand that under the laws of the state I have a Constitutional right to a trial by a jury."
 
 
 17
 Has your client signed this?
 
 
 18
 MR. PAPOURAS: Yes, he did, your Honor.
 
 
 19
 THE COURT: All right. Mr. Linte, you understand this?
 
 
 20
 MR. PAPOURAS: He probably is not--your Honor, we have an interpreter here that--
 
 
 21
 THE COURT: All right. Maybe we can go through the interpreter.
 
 
 22
 He waives his right to a trial by jury?
 
 
 23
 MR. PAPOURAS: Yes, your Honor, he understands it and stands by it.
 
 
 24
 This colloquy indicates that the court made inquiry through the interpreter into petitioner's understanding of his waiver and that petitioner's attorney affirmed petitioner's understanding.
 
 
 25
 The record reflects that Linte has been in this country since 1978 and that he has worked in this country since that time. Linte was also landlord of a building and interactive with a number of tenants including Mr. Kish, the victim of the offense involved, who was compelled to give Linte a confession in English.
 
 
 26
 The Ohio Court of Appeals rejected appellant's contentions concerning the effect of the jury waiver, and the Ohio Supreme Court overruled his motion for leave to appeal on the basis that no substantial constitutional issue existed. We give deference to the Ohio courts' findings in this regard.
 
 
 27
 Accordingly, based on the record before us, we agree with the district court's determination that petitioner knowingly, intelligently, and voluntarily waived his right to a jury trial.
 
 B.
 
 28
 Petitioner's second argument is that there is not sufficient evidence to prove beyond a reasonable doubt that he acted without privilege in holding his victim against his will[2] and that he possessed a firearm while committing the offense. He argues that he was entitled to detain his victim since he suspected him of stealing his property.
 
 
 29
 The standard for reviewing a sufficiency of the evidence claim in a habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court should give special deference to the trier of facts resolution of questions of credibility. Patton v. Yount, 467 U.S. 1025, 1038 (1984).
 
 
 30
 The district court made the following ruling on petitioner's sufficiency of the evidence claim:
 
 
 31
 A thorough review of the trial transcript shows that this case hinged upon the credibility of the witnesses. Petitioner, defendant below, and one witness told one story while the alleged victim and other State witnesses told another. Only the trier of fact is responsible for resolving conflicting testimony. Jackson v. Virginia, 443 U.S. at 319. The Court cannot say that the evidence presented at trial could not reasonably support a finding of guilt beyond a reasonable doubt.
 
 
 32
 We agree.
 
 
 33
 The privilege that petitioner asserts is the right to make a "citizen's arrest" of a felon or suspected felon. Ohio Rev.Code Ann. Sec. 2935.04 (Page 1987). Section 2935.04 states that "any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of [a felony], and detain him until a warrant can be obtained." The victim in this case testified that petitioner tied him to a pole in the basement of his apartment building for several hours until the victim signed a confession. This activity cannot be characterized as a detention until a warrant could be obtained, and therefore, based on this testimony, the trial court could rationally find that petitioner was not acting under a privilege when he detained his victim.
 
 
 34
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 35
 RYAN, Circuit Judge, dissenting.
 
 
 36
 As the court correctly explains, we are asked in this appeal to determine whether petitioner knowingly, intelligently, and voluntarily waived his sixth amendment right to trial by jury. My brothers say he did because they believe that "the [trial] court made inquiry through the interpreter into petitioner's understanding of his waiver and ... petitioner's attorney affirmed petitioner's understanding." In my view, the record does not demonstrate that the interpreter's services were utilized at all, to say nothing of whether they were utilized to assure that the petitioner acquiesced in his counsel's waiver of jury trial. In my judgment, the absence of a record unambiguously demonstrating petitioner's jury trial waiver shifted the burden of persuasion to the state to demonstrate, at least by a preponderance of the evidence, that petitioner, not his lawyer, waived his right to a jury trial, knowingly, intelligently, and voluntary. Because I conclude the state failed to carry this burden, I dissent.
 
 I.
 
 37
 "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Adams v. United States ex rel. McMann, 317 U.S. 269, 278 (1942). The Seventh Circuit has described the scope of a judicial inquiry into the question of whether a defendant has knowingly, voluntarily, and intelligently waived his right to trial by jury:
 
 
 38
 Presuming waiver of such a cherished right from a silent record is impermissible, and in a collateral proceeding either the record or independent evidence must demonstrate a valid waiver, see Carnley v. Cochran, 369 U.S. 506, 516 (1962) (waiver of counsel); cf. Boykin v. Alabama, 395 U.S. 238, 242 (1969) (direct appeal of guilty plea), though the burden of establishing a prima facie invalid waiver rests on the person asserting its invalidity, see Adams, 317 U.S. at 281 (jury trial waiver); cf. Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938) (right to counsel).
 
 
 39
 United States ex rel. Williams v. DeRobertis, 715 F.2d 1174, 1178 (7th Cir.1983), cert. denied, 464 U.S. 1072 (1984).
 
 
 40
 Our court recently described the allocation of the burden of proof in the analogous area of habeas cases challenging the validity of guilty pleas:
 
 
 41
 Where the waiver [of the accused's constitutional rights to trial by jury, confrontation of one's accusers, and the privilege against compulsory self-incrimination] is subsequently challenged, the state normally will attempt to demonstrate its effectiveness by introducing a transcript of the proceedings surrounding the trial court's acceptance of the guilty plea, and other trial court records. Where the records leave doubt as to whether the plea was in fact intelligent and voluntary, the state may look to evidence extrinsic to the court records, such as the recollection of those attending the plea proceedings. However, in the face of a record which is inadequate to demonstrate the regularity of proceedings at the time of a guilty plea's acceptance, the state must make a clear and convincing showing with this extrinsic evidence that the plea was in fact intelligently and voluntarily entered. Roddy v. Black, 516 F.2d 1380, 1384 (6th Cir.), cert. denied 423 U.S. 917 (1975). We have imposed this extraordinary standard of persuasion in view of misgivings inherent in "collateral proceedings that seek to probe murky memories," a problem not present where the contemporary record demonstrates a valid waiver. Boykin v. Alabama, 395 U.S. 238, 244 (1969).
 
 
 42
 Dunn v. Simmons, --- F.2d ----, No. 88-5015, slip op. at 3-4 (6th Cir. June 13, 1989).
 
 
 43
 In my view, the Dunn methodology provides a useful model for the development of an analytical framework for habeas challenges to the waiver of the right to trial by jury. However, I believe that it should be modified to embody a less stringent state burden of persuasion in cases where the record does not unequivocally establish waiver because a defendant's decision to forego trial by jury and instead be tried by the court does not implicate as many constitutional values as does a guilty plea. In Boykin v. Alabama, 395 U.S. 238, 242 (1969), the Supreme Court placed special emphasis on the finality of a plea of a guilty--"it is itself a conviction; nothing remains but to give judgment and determine punishment." The Court also emphasized the fact that a plea of guilty involves the waiver of three separate constitutional rights--the fifth amendment right not to incriminate oneself; the sixth amendment right to trial by jury; and the fifth amendment right to confront one's accusers. Id. at 243. Here, of course, only one of those three is implicated. I would therefore modify the Dunn standard for cases involving only the right to trial by jury to hold that when the record does not unambiguously establish a valid waiver, the state must demonstrate by a preponderance of the evidence that the waiver is voluntary, knowing, and intelligent.
 
 II.
 
 44
 The first step in analyzing petitioner's claim, then, is a determination of whether the record unambiguously establishes a valid waiver. What is first apparent is that the record is not silent: petitioner did sign a jury waiver form, the trial court did question counsel about petitioner's understanding of the waiver, and defense counsel did assure the court that petitioner understood that he was giving up the right to be tried by a jury. Nevertheless, petitioner argues that because he does not understand English, the waiver form was incomprehensible to him, and he contends that the record demonstrates that the interpreter was never utilized during the discussion between the court and defense counsel. My colleagues reject this argument, and instead find that the trial court, through the interpreter, inquired into defendant's waiver.
 
 
 45
 In fact, the record is silent as to whether the interpreter was utilized during the conversation in question. The court's quotation of the colloquy ends with the trial judge's comment that "[m]aybe we can go through this with the interpreter." The exchange which followed fails to indicate whether the interpreter thereafter translated the exchange between the court and counsel:
 
 
 46
 THE COURT: All right. Maybe we can go through the interpreter. He waives his right to trial by jury?
 
 
 47
 [DEFENSE COUNSEL]: Yes, your Honor, he understands it and stands by it.
 
 
 48
 THE COURT: All right. You have witnessed this?
 
 
 49
 MR. PAPOURAS: Sir?
 
 
 50
 THE COURT: Did your witness [sic] this yourself? I think you did.
 
 
 51
 MR. PAPOURAS: I believe I did, your Honor. May I just view it and confirm it? Yes, that is my signature.
 
 
 52
 Your Honor, I would like to take a moment to have the interpreter explain to Mr. Linte what the opening statement of the Prosecutor was.
 
 
 53
 THE COURT: Well, here, we can't--I am not going to delay things. As we go along, maybe he can talk to your client and say what is proceeding, but we cannot stop at every nook and cranny of the trial here.
 
 
 54
 MR. PAPOURAS: Well, I appreciate your position, Judge, except that I thought, since he is the accused, he really ought to know.
 
 
 55
 THE COURT: Well, it is not evidence. Sit down, sir. Sit down.
 
 
 56
 What is conspicuously absent from all of the foregoing colloquy is any participation by the defendant or the interpreter. Not only does this record fail to show whether the interpreter ever translated the court's remarks to petitioner, it also demonstrates that petitioner never personally indicated that he understood the court's remarks. And most telling of all, immediately after the discussion of the jury waiver form, the trial court expressed impatience with defense counsel when he attempted to have the prosecutor's opening statement translated for petitioner. Although this did not directly concern the use of the interpreter during the inquiry about the jury waiver, it does demonstrate that the trial court found the use of the interpreter bothersome. The logical inference is that after raising the possibility of "maybe ... go[ing] through the interpreter," the court plunged ahead with its questions of defense counsel without waiting for the interpreter to translate the proceedings to petitioner. I conclude that the record does not, on its face, establish whether the waiver form or the court's conversation with counsel were ever translated to petitioner. As in Dunn, "the records leave doubt as to whether the [waiver] was in fact intelligent and voluntary...."
 
 
 57
 Consequently, the burden of persuasion shifts to the state to show by a preponderance of the evidence that petitioner did in fact voluntarily, knowingly, and intelligently waive his right to trial by jury. The state presented no extrinsic evidence on this question, although it presumably could have offered the testimony of the interpreter, defense counsel, prosecutor, trial judge, or, for that matter, anyone else present in the courtroom who observed the interpreter's participation, or lack of it, to meet its burden of showing that petitioner was aware that his right to trial by jury was being waived. Because the state did not present such evidence, petitioner's claim that neither the form nor the court's oral statements were translated for him stands uncontradicted.
 
 
 58
 As noted above, the Supreme Court, speaking through Justice Frankfurter, long ago observed that "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Adams, 317 U.S. at 278. In my judgment, this case presents "unique circumstances" which require this court to conclude that petitioner did not make "an intelligent, competent, self-protecting waiver." I would hold that the district court erred by denying the petition on the ground that petitioner was denied his sixth amendment right to trial by jury.
 
 
 
 [1]
 The district court refused to consider petitioner's original petition because it included an unexhausted claim. Petitioner moved to amend his petition and dismiss the claim. The district court granted the motion and considered petitioner's exhausted claims
 
 
 [2]
 Ohio Revised Code section 2905.02 defines the crime of abduction as follows: "No person, without privilege to do so, shall knowingly do any of the following: ... By force or threat, restrain another of his liberty, under circumstances which create a risk of physical harm to the victim, or place him in fear...." Ohio Rev.Code Ann. Sec. 2905.02 (Page 1987)