943 F.2d 51
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Fidel F. BARRIOS, Petitioner-Appellant,
v.
Dale FOLTZ, Respondent-Appellee.
 No. 90-1984.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1991.
 
 Before BOGGS, Circuit Judge, BAILEY BROWN, Senior Circuit Judge, and GIBBONS, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Fidel Barrios appeals from the district court's denial of his petition pursuant to 28 U.S.C. § 2254 for issuance of a writ of habeas corpus. For the following reasons, we affirm the district court.
 
 
 2
 * A
 
 
 3
 Barrios urges us to vacate his conviction because the waiver of his right to a jury trial was not made knowingly or intelligently. Barrios, who at the time of the trial was unable to read, speak, or comprehend English, gives three reasons why we should reach this conclusion. First, he claims that he waived his right only because his court-appointed attorney, Mr. George Mann,[1] had promised him that he would receive only a ten-year sentence if he waived the right. Second, Barrios--a Cuban immigrant who arrived in the United States in 1980 pursuant to the Mariel evacuation--claims that Mann was unable to speak with him in Spanish, and that therefore he did not understand the nature of the right he was waiving. He contends that part of the reason he was unable to converse with Mann was because Mann was not fluent in the Cuban dialect of Spanish. Third, he claims that the district court's failure to explain to him in court that he had the right to participate in the selection of the jurors constitutes a constitutional error requiring a ruling that Barrios's waiver was not knowingly and intelligently made.
 
 B
 
 4
 Barrios was sentenced to prison for life without the possibility for parole pursuant to his conviction for first-degree murder by a Michigan state court in 1982. He had a bench trial because he twice in open court waived his right to a jury trial.
 
 
 5
 The court asked Barrios many specific questions on each occasion to ensure that Barrios understood the right that he was waiving. On March 8, 1982, the court asked Barrios, inter alia, the following questions, to which Barrios made the following responses:[2]
 
 
 6
 (1) if he knew he was charged with murder in the first degree ("yes");
 
 
 7
 (2) if he had been forced to sign the form waiving his right to jury trial ("no");
 
 
 8
 (3) if anyone had promised him anything to get him to sign the waiver form ("no");
 
 
 9
 (4) if he understood that a jury consists of twelve persons who would decide his guilt or innocence ("yes");
 
 
 10
 (5) if he was satisfied with his attorney's advice ("yes"); and,
 
 
 11
 (6) if he understood that all twelve jurors would have to agree to convict him ("yes").
 
 
 12
 On March 10, the court again asked Barrios many questions. Among these, along with his responses, were:
 
 
 13
 (1) if he understood that no one could take away his right to a jury trial ("yes");
 
 
 14
 (2) if anyone had forced him into giving up his right ("no");
 
 
 15
 (3) if he understood that a jury consisted of twelve persons who would have to agree on a verdict of guilt or innocence ("yes");
 
 
 16
 (4) if he was satisfied with his attorney's advice ("yes");
 
 
 17
 (5) if Barrios understood that he [the judge] would try Barrios in the absence of a jury ("yes");
 
 
 18
 (6) if Barrios understood that he [the judge] had read the preliminary examination transcript to decide some motions ("yes");
 
 
 19
 (7) if he understood the charge ("murder in the first degree");
 
 
 20
 (8) if he understood what the consequences of being found guilty would be ("entire life in prison"); and,
 
 
 21
 (9) if he was able to communicate with his attorney ("yes").
 
 
 22
 Barrios was provided with a Spanish-English interpreter on both occasions. On March 10, two other Spanish-English interpreters were present to assist the court and the prosecutor.
 
 
 23
 Barrios filed his petition in 1987. In 1988, the district court denied four of his five contentions,[3] and referred the case to a federal magistrate for an evidentiary hearing to determine if Barrios's waiver was the product of Mann's alleged promise that Barrios would be sentenced to no more than ten years in jail if he waived his right to a jury trial.
 
 
 24
 That hearing took place over two days in September 1988. Barrios testified that he waived his jury right because Mann had promised him that he would be sentenced to no more than ten years if he did so. He further testified that he was told to agree with all of the judge's questions in court.
 
 
 25
 Mr. Merquiades Cespedes also testified in support of Barrios. Cespedes, a fellow inmate also imprisoned for life, testified that he acted as interpreter for Mann in his jailhouse meetings with Barrios. Cespedes also testified that Mann never explained the right to a jury trial to Barrios, and that Mann told Barrios that he would be sentenced to no more than ten years if he waived his right to a jury trial.
 
 
 26
 Mann testified at the hearing and contradicted key elements of the testimony of Barrios and Cespedes. He testified that he told Barrios that he thought Barrios would likely be sentenced to ten years if he waived his right to a jury trial. However, Mann told Barrios this because he believed that a bench trial was more likely to result in a conviction for second-degree murder, if not an outright acquittal. Mann testified that he recommended that Barrios request a bench trial for many reasons, among them that (1) Barrios would be the victim of prejudice because he was a Marielito, (2) the victim was black and the trial would occur in heavily black Wayne County, Michigan (Detroit), (3) Barrios's inability to understand English would make it necessary to have an interpreter and this might prejudice the jury, and (4) the judge would be better able to concentrate on the legal issues and weigh contradictory evidence than would a jury. Mann also testified that Barrios could never fully understand what rights were because he had been born and raised in Communist Cuba, but that within that cultural limitation Barrios understood what a jury trial meant. Finally, Mann testified that he had turned down an offer for a plea bargain from the prosecution for a six to ten-year sentence.
 
 
 27
 The prosecutor at the original trial, Mr. Bruno, contradicted that last point in his testimony. Bruno denied ever offering Mann and Barrios a plea bargain. Bruno also testified to seeing Mann and Barrios converse in Spanish at the waiver hearing without difficulty. Bruno said that Barrios did not request assistance at the hearing when talking with Mann even though an interpreter was available.
 
 
 28
 The interpreter at the March 10 hearing, Mrs. Sitella Rodriguez Glenn, also testified. She testified that Mann could speak Spanish, although she did not think Mann was fluent. She also testified that Mann had no apparent difficulty in speaking Spanish with Barrios at the hearing. She testified that Mann did not fully understand the Cuban dialect, although he was familiar with it, having married a Cuban woman. Mann agreed in his testimony that he was not fluent in the Cuban dialect.
 
 
 29
 The magistrate ruled that Barrios's waiver was not knowledgeable and voluntary. The only reasoning he gave to support this ruling was that the contradictory testimony raised doubts as to whether Barrios knowledgably and intelligently waived his right.
 
 
 30
 The district court rejected the magistrate's report. The court specifically ruled that Mann's testimony was more credible than that of Cespedes and Barrios on the following points:
 
 
 31
 1) Mann was fluent in Spanish;
 
 
 32
 2) No interpreter was present with Mann and Barrios in jail when the two discussed the case;
 
 
 33
 3) Mann did not tell Barrios that he would be sentenced to no more than ten years if he waived the jury right;
 
 
 34
 4) Mann told Barrios that the judge could convict him of first-degree murder;
 
 
 35
 5) Mann told Barrios what the possible penalties for first-degree murder were;
 
 
 36
 6) Mann told Barrios that the odds of a conviction of first-degree murder were greater with a jury than with a judge; and,
 
 
 37
 7) Mann told Barrios that ten years would be a reasonable sentence to expect for a conviction of second-degree murder.
 
 
 38
 The court also noted the testimony of Glenn and Bruno that supported Mann's testimony, such as their observations that Mann and Barrios conversed without apparent difficulty in Spanish. Petitioner's timely appeal followed.
 
 II
 
 39
 Barrios's first two arguments--that Mann had promised him he would serve no more than ten years if he waived his right, and that he did not understand the right because Mann could not communicate effectively in Spanish--involve disputes of fact. We will not overturn factual findings made in the first instance by a federal district court considering a petition for habeas corpus unless they are clearly erroneous. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). A finding is "clearly erroneous" when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). We do not have a definite and firm conviction that the district court erred in finding Mann's testimony more credible than Barrios's and Cespedes's, and that Mann and Barrios could converse in Spanish.
 
 
 40
 Barrios asks us to overturn the district court's findings because he argues Mann is lying. He offers two arguments in support of this contention. First, he argues that Mann is inherently not credible because Bruno's testimony impeached Mann's on the question of whether a plea bargain offer had been extended. Second, he argues that Cespedes's testimony, combined with the exposure of Mann's lack of fluency with the Cuban dialect, shows that Mann must have lied because he could not have spoken with Barrios alone, and the only person who helped Mann communicate with Barrios says Mann is lying. We believe the district court was not clearly erroneous in rejecting either argument.
 
 
 41
 Regarding Bruno's testimony, Barrios implicitly asks us to extrapolate two points from the fact of Bruno's contradiction; that Bruno is telling the truth, and that Mann's lying about this point means the remainder of his testimony--particularly that part where he states that he did not promise Barrios a maximum sentence of ten years if Barrios waived his right--is suspect. The district court need not have jumped to either conclusion. There is no proof that Bruno is a more credible witness. Even if there were, the court need not have made the further inference that any error in Mann's testimony about a plea offer means that all of his other testimony is unworthy of belief. Cespedes's testimony is the only evidence disputing Mann's explanation of his alleged promise to Barrios, and the district court was quite justified in finding that Cespedes's testimony was not credible.
 
 
 42
 A key portion of Cespedes's and Barrios's testimony is that Mann could not speak Spanish well enough to speak with Barrios. In fact, Cespedes's entire testimony rests on this fact, as he could only know what Mann told Barrios if his claim to have interpreted for Mann with Barrios is true. However, two witnesses--Bruno and Glenn--testified that they saw Barrios and Mann speak Spanish to each other in court without difficulty. These observations are supported by the fact that Barrios had previously requested the court to appoint a new attorney when the first attorney proved unable to speak Spanish. This fact causes Barrios two problems. If Barrios was satisfied with an English-speaking attorney as long as Cespedes translated for him, then why did he move to replace his first attorney on language grounds? If Barrios wanted a Spanish-speaking attorney and Mann did not fit the bill, then why did he not file another motion for a third attorney? See United States v. Sanchez, 928 F.2d 1450, 1456 (6th Cir.1991) ("Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.") See also Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir.1989). Both of these facts gave the district court strong grounds to infer that Mann could speak Spanish with Barrios, and that therefore Cespedes's testimony was false. And if Cespedes's testimony is false, there is no testimony incriminating Mann's on the crucial point of the content of his advice to Barrios. Of course, if Cespedes's testimony is false, then Barrios's claim that he could not communicate effectively with Mann is also false. Given this, we cannot hold that the district court was clearly erroneous in believing Mann and disbelieving petitioner's case.
 
 
 43
 Mann's lack of fluency in particulars of the Cuban dialect is not persuasive proof that Cespedes's testimony is true. Many languages have dialects, but almost all languages have a formal version of the language that is used for official proceedings. For example, the Southern dialect in America has many words for objects that differ from those used in other American dialects, but a Southerner would be able to understand the courtroom proceedings in any state of the Union because the English used in federal courts does not depend on words that are not also in common currency in the Southern dialect. Neither Barrios nor his counsel at oral argument has pointed to a single word relevant to the court proceedings or Mann's advice that even might have been different in the Cuban dialect than in Castillian, Argentine, or any other of the dialects of Spanish. Without that proof, Barrios's argument is without merit.
 
 
 44
 Barrios also argues that we should adopt the magistrate's findings because he was present at the hearing and could observe the demeanor of the witnesses. This ability allegedly gave the magistrate the opportunity to weigh the credibility of the witnesses more accurately than the district court, which made its findings from reading the transcripts of the hearing. This argument suffers from two flaws. First, the Magistrates Act specifically provides that a district court that had delegated some of its duties to a magistrate "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). As the district court may not give the magistrate's report any deference in reaching its findings, even though it is relying solely on the transcript in making its de novo review, so too may we not give that report any deference when reviewing the district court's findings. Second, the magistrate did not actually make any determination that Mann was not credible. Instead, the magistrate merely noted that "contradictory testimony" existed that made Barrios's knowledge of the right he was waiving "questionable." That conclusion in no way contradicts or provides any basis for questioning the district court's findings.
 
 III
 
 45
 Barrios also argues that the Michigan court's failure to advise him at the time of waiver that he could participate in the selection of jurors renders his waiver unknowledgeable and unintelligent. This argument relies on a statement this court made in United States v. Martin, 704 F.2d 267, 273 (6th Cir.1983) that:
 
 
 46
 A defendant is sufficiently informed to make an intelligible waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right. Knowledge of these essential attributes is generally sufficient to enable a defendant to make a knowing and intelligent decision.
 
 
 47
 Barrios urges us to hold that such failure to provide this information rises to the level of a constitutional violation.
 
 
 48
 The writ of habeas corpus may only issue upon proof that the petitioner is being held in violation of the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); 28 U.S.C. § 2254(a). A panel of this court has directly held, in a case where the district court informed the defendant of none of the four Martin factors before accepting a waiver of jury trial, that the suggested Martin colloquy is not a constitutional rule. United States v. Sammons, 918 F.2d 592, 596-98 (6th Cir.1990). In fact, the specific Martin colloquy is merely a suggestion, and we have not required the verbatim reading of it pursuant to our supervisory powers. Martin, 704 F.2d at 275. A violation of this court's advice is not a violation of the constitution, laws, or treaties of the United States. We may not grant habeas corpus based on failure to follow such advice.
 
 IV
 
 49
 For the foregoing reasons, we AFFIRM the district court's denial of Barrios's petition.
 
 
 
 *
 The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Mann was actually Barrios's second court-appointed attorney. The first was removed by the court at Barrios's request. The first attorney spoke only English, and Barrios could not talk with him. Barrios did not file a similar motion requesting a new attorney after Mann was appointed
 
 
 [2]
 Barrios's answers are contained in the parentheses following each question
 
 
 [3]
 None of these four has been appealed